THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. STEVEN J. TORTORICI, Defendant-Appellee.

Third District   No. 3—90—0173

Opinion filed November 30, 1990.

Joseph Navarro, State's Attorney, of Ottawa (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Mark D. Fisher and Robert Agostinelli, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE BARRY delivered the opinion of the court:

This appeal is brought by the State from an order of the circuit court of La Salle County granting defendant Steven Tortorici's motion to suppress evidence seized after he was involved in a traffic accident.

At the hearing on the motion to suppress, defendant testified that he was driving his wife's car on Interstate 39 on October 4, 1989, at about 10:45 a.m. when he fell asleep. His car left the roadway and collided with a pickup truck parked in the median. Illinois State Trooper James Lower testified that after he arrived at the scene, he had both defendant and the driver of the truck get into the police car to answer questions. The driver of the truck explained that he had stopped to help another motorist who was having car trouble. Defendant fell asleep during questioning and, upon awaking, talked about

having left a woman. The officer issued a ticket to defendant for driving into the median.

Since defendant's vehicle was inoperable, Officer Lower called a tow truck and offered to take defendant to a restaurant located just off the interstate. He told defendant to get anything of value out of his car and then saw defendant carrying a blue denim jacket back to the police car in an unusual manner. He carried it with both hands, palms up, instead of by the neck of the jacket. When defendant got back into the police car, he placed the jacket across his knees. The officer asked if he had any weapons or contraband, and defendant did not answer.

The officer then reached over, took the jacket, placed it on the floor on his own side of the car, and ordered defendant out of the car. The officer testified that when he picked up the jacket he observed that it was very heavy and that there was something inside of it. The officer did not testify, however, that he felt or otherwise observed anything like a weapon or other contraband in the jacket. He did a pat down search, told defendant he was under arrest, put handcuffs on his wrists with his hands behind his back, put him back in the car, and fastened his seat belt. The officer then searched the jacket and found a loaded gun, a knife, and a cocaine pipe.

The officer transported defendant to a police station where he was given the *Miranda* warnings for the first time. A later search of defendant's car produced additional drug paraphernalia. Defendant was indicted on charges of unlawful use of weapons by a felon, unlawful possession of a controlled substance, and driving under the influence of drugs.

In ruling on the motion to suppress, the trial court found that an arrest occurred when the officer told defendant he was under arrest, that there was no probable cause for an arrest at that point, and that the search occurred after defendant was arrested. The trial judge ruled that since the arrest was unlawful, the items seized were suppressed.

On appeal, the State first contends that, in spite of the police officer's words and actions, an arrest did not take place prior to the search of the jacket but rather the officer conducted a brief stop in order to maintain the status quo and to take reasonable measures to protect himself, pursuant to the authority of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

■■ The determination of the trial court on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Galvin* (1989), 127 Ill. 2d 153, 535 N.E.2d 837.) Here the officer testi-

fied that, before he told defendant he was under arrest and handcuffed him, he had no knowledge that defendant had committed a crime, only a "hunch" or suspicion. It is important to note that the State does not claim that probable cause for an arrest existed prior to the search of the jacket. Neither does the State claim that a valid arrest occurred. Rather, the State urges us to look beyond the trooper's words to the objective circumstances as they existed at the time. The State argues that the trooper was justified in temporarily detaining and searching defendant so as to be assured of his own safety before he transported defendant in his car.

■ It is plain from the record that the police officer believed he had arrested defendant when he handcuffed him, and the trial court so found. The facts do not support the State's argument that no arrest took place. The test is whether a reasonable, innocent person would believe he was under arrest (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766), and it has been held that handcuffing a defendant in a squad car constituted an arrest (*People v. Gabbard* (1979), 78 Ill. 2d 88, 398 N.E.2d 574). In *People v. Gabbard*, the Illinois Supreme Court held that the items seized after the handcuffing should have been suppressed.

■ When we analyze the events in the case at bar, we conclude that a *Terry* stop may have occurred when the officer took the jacket, ordered defendant out of the car, and frisked him. When the officer said, "You are under arrest" and put handcuffs on defendant, the temporary stop was converted into an arrest. We cannot imagine what more an officer would do to accomplish an arrest than to advise the arrestee, to handcuff him, and to strap him into the police car with the seat belt.

The State did not argue in the trial court and does not argue on appeal that the officer had probable cause to arrest defendant. The trial court ruled that the officer arrested defendant on mere suspicion and then, after defendant was handcuffed, conducted a search of the jacket. Clearly, had the officer searched the jacket first and found the gun and/or other contraband, a lawful arrest could have followed. The problem here is that the arrest came before cause for the arrest was discovered. The trial court correctly granted the motion to suppress.

■ The State also argues for the first time on appeal that this case comes within the "inevitable discovery exception" to the exclusionary rule. According to the State, the exclusionary rule should not be applied where evidence of an offense obtained illegally would inevitably have been discovered lawfully, such as during an inventory search at the police station following a valid arrest. See *People v.*

*Hoskins* (1984), 101 Ill. 2d 209, 461 N.E.2d 941 (where drugs were found during an illegal search of the purse of a woman previously arrested for prostitution).

■ We consider this issue to have been waived by the State when it failed to argue this theory in the trial court. Furthermore, the fact that the officer found a weapon and contraband during the search which followed an unlawful arrest does not entitle the State to claim that the weapon would inevitably have been found lawfully. Since the State virtually admits that there was no cause for an arrest other than the weapons and contraband found in the jacket, whether any subsequent lawful search would occur was a matter of speculation and was not inevitable. In *United States v. Cunningham* (D.C. Cir. 1970), 424 F.2d 942, 943, the court stated, "A lack of probable cause cannot be made up in hindsight by a hypothetical variation in the basis on which the search was conducted." As the court held in *United States v. Cunningham*, the fact that a lawful frisk might have disclosed the concealed items does not validate the unlawful arrest or render admissible the evidence obtained in a search incident to that arrest.

For the reasons stated, we affirm the order of the trial court.

Affirmed.

SCOTT and STOUDER, JJ., concur.