FIRST DIVISION

June 12, 2000

No. 1-98-2445

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ANDRE DELAWARE,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Themis N. Karnezis,

Judge Presiding.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was found guilty of possession of a controlled substance with intent to deliver and sentenced to a nine-year prison term.  On appeal, defendant contends that the trial court erred in denying his motion to quash his arrest and suppress evidence and that the State failed to prove him guilty beyond a reasonable doubt.

BACKGROUND

On May 31, 1997, Chicago Housing Authority (CHA) police officers arrested defendant inside an apartment in the Robert Taylor Homes complex.  They subsequently searched his vehicle parked nearby, recovered narcotics from the vehicle, and, based on this discovery, charged defendant with 
possession of more than 100 grams of cocaine with intent to deliver.  Prior to trial defendant filed a motion to quash his arrest and suppress evidence alleging that the officers had acted without a search or arrest warrant, or without probable cause in the absence of exigent circumstances.

At the hearing on that motion, CHA police officer Jesse Kuykendoll testified that on May 31, 1997, he and his two partners were on routine patrol in the Robert Taylor Homes complex on South State Street in Chicago.  About 6:30 a.m., they were in their car at 51st
 and State when shots rang out from the vicinity of 5135 S. Federal Street.  The officers drove into the parking lot of the building at 5135 S. Federal Street and chased several men inside the building, but lost them on the staircase. 

After this unsuccessful pursuit, the officers, who were in uniform, returned to the parking lot to look for weapons or shell casings.  As they were doing so, they noticed a white Jeep Cherokee parked in the parking lot of the 5100 S. State Street building.  They approached the Jeep and when they arrived within 20 feet of the car, defendant exited the Jeep and ran.  The officers chased defendant into the building at 5100 S. State and then into a third-floor apartment of that building.  They arrested him inside the apartment.  Officer Kuykendoll acknowledged that he had not seen defendant committing any crimes and did not have a warrant for his search or arrest.  He testified that he "felt" that defendant was involved in the shooting.  Officer Kuykendoll, with his two partners, brought defendant back to the parking lot.   

At the parking lot, Officer Kuykendoll asked defendant if they could search the vehicle and look for weapons.  Defendant said there were no weapons in the vehicle and that he had no problem with the officers going through it.  Defendant gave his consent to the search and Kuykendoll recovered 138 grams of suspect crack cocaine from the arm rest of the car.
  Defendant was  transported to the station where he gave a home address on the southwest side of Chicago.

Upon further examination by defense counsel, Officer Kuykendoll testified that defendant was not among the group he saw running toward the 5135 S. Federal Street building after the shots were fired and that he first noticed defendant in the Jeep in the parking lot at 5100 S. State about five minutes later.  As Kuykendoll, who was in uniform, approached defendant, he began to run away. Kuykendoll yelled, "Stop, police," but defendant continued and was arrested inside the third-floor apartment.  The officers then conducted a protective search of defendant and found no weapons or controlled substances on him.  Inside the apartment, the officers handcuffed defendant and led him out of the apartment and out of the apartment building back to the parking lot, where defendant consented to the search of the vehicle resulting in the discovery of the cocaine.

The trial court denied defendant's motion and  found the actions of the officers reasonable in light of the totality of the circumstances.  The court found as follows:

"[The] court finds on the date in question the officers were in the vicinity of 51st
 and State slash Federal.  They heard shots fired.  They saw people running.  They chased them. They did not apprehend them.  They returned to the area.  They observed Mr. Delaware who was then alighted, leaving the door open and running.  We think- I think those are articulable facts at least sufficient to allow the officers to follow along, which they did.  I think then what transpired therefore was reasonable in light of the totality of the circumstances.  They returned to the vehicle.  They received - [c]ould they have gone into the vehicle?  I don't have to address that question because they were given consent.  So even notwithstanding the fact that they did not have a search warrant, I think their actions were reasonable." 

A bench trial ensued and the parties first stipulated to the testimony given by Kuykendoll on the pretrial motion.  The officer then testified that he inventoried the bags of suspect cocaine that he recovered from the armrest of the Jeep.  He acknowledged a mistake in his police report that indicated the narcotics were recovered from the defendant and not from the armrest of the Jeep
.  He testified the police report was incorrect. 

The State concluded its case with a stipulation as to the results of the scientific testing of the recovered substance.  This showed that the nine plastic bags contained 138.6 grams of cocaine.  After the trial court denied defendant's motion for a directed finding, the defense rested without presenting any witnesses.  The trial court then found defendant guilty of possession of over 100 grams of cocaine with intent to deliver and sentenced him to a nine-year prison term.  Defendant appeals.

ANALYSIS

I. Arrest 

Defendant challenges the trial court's ruling on his motion to quash arrest and suppress evidence under the fourth and fourteenth amendments to the United States Constitution (U.S. Const., amends. IV, XIV) and under article I, section 6 and section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §§ 6, 10).  He maintains that his arrest inside the apartment, which was made without  a warrant or probable cause, was improper and that this illegal arrest invalidated his subsequent consent to search the vehicle.  The State responds that the officers conducted a proper investigative stop of defendant and arrested him, not in the apartment, but in the parking lot after he voluntarily consented to a police search of his vehicle.    

Generally, the trial court's ruling on a motion to quash arrest and suppress evidence will not be reversed unless it is manifestly erroneous.  
People v. Foskey
, 136 Ill. 2d 66, 76 (1990).  The defendant acknowledged that neither the facts nor the credibility of Officer Kuykendoll, the only State witness, is contested.  
Officer Kuykendoll was the only witness to testify at the pretrial motion in this case.  The trial court determined, based on the totality of the circumstances, that the conduct of the officers which led to the discovery of the cocaine was reasonable.  We therefore review 
de novo
 defendant's legal challenge to the trial court's denial of his motion to quash arrest and suppress evidence because defendant challenges neither the trial court's factual findings nor Officer Kuykendoll's version of the events.  
People v. Gonzalez
, 184 Ill. 2d 402, 412 (1998)
.

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend IV; Ill. Const. 1970, art. I, §6.  Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  
United States v. Brignoni-Ponce
, 422 U. S. 873, 878, 45 L. Ed. 2d 607, 614-15, 95 S. Ct. 2574, 2579 (1975).  In 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the United States Supreme Court held that where a police officer observes unusual conduct, he may stop and detain a person without probable cause to investigate possible criminal activity.  392 U. S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884-85.  To justify a 
Terry
 stop, an officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  392 U. S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.

Illinois has codified the holding of 
Terry
 in section 107-14 of the Code of Criminal Procedure of 1963: "[a] peace officer * * * may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense * * * and may demand the name and address of the person and an explanation of his actions." 
 
725 ILCS 5/107-14 (West 1996); 
 People v. Flowers
, 179 Ill. 2d 257, 262 (1997).  The court in 
Terry
 set forth the following inquiry for deciding whether an officer's investigative detention is reasonable: (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 
 Terry
, 392 U. S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.  "An objective standard is used in determining whether the facts and circumstances known to the officer at the time of the stop would warrant a person of reasonable caution to believe a stop was necessary to investigate the possibility of criminal activity."  
People v. Walters
, 256 Ill. App. 3d 231, 234 (1994).  The State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.  
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1326 (1983).

Based on the facts and circumstances known to Officer Kuykendoll, the initial stop and frisk of defendant were legally justified.  Several minutes after hearing what were thought to be the sounds of gunshots from the vicinity of 5135 S. Federal, the officers confronted defendant in the parking lot at 5100 S. State.  Upon seeing the uniformed officers approach, defendant began running.  The totality of the circumstances of the situation known to Officer Kuykendoll at that time, including defendant's sudden unprovoked flight at the approach of the officers in the parking lot, provided sufficient articulable suspicion of criminal activity to warrant an investigatory stop and frisk.  
Terry
, 392 U.S. at 21-24, 20 L. Ed. 2d at 906-08, 88 S. Ct. at 1879-81 (codified at 725 ILCS 5/107-14 (West 1996)).  Under 
Terry
, a police officer may stop and detain a person for temporary questioning if the officer reasonably infers from the situation that the person is committing, is about to commit or has committed a crime.  
Terry
, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880.  An officer may be justified in "conducting a limited search for weapons, commonly referred to as a 'frisk,' once he had reasonably concluded that the person whom he had legitimately stopped posed a threat to the safety of himself or others."  
Gonzalez
, 184 Ill. 2d at 421.

The significance of an individual's unprovoked flight from approaching police officers has recently been addressed in 
Illinois v. Wardlow
, 528 U.S. ____, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000)
.  In 
Wardlow
, police officers were in an area known for heavy narcotics activity.  When the officers approached, defendant fled.  One officer stopped defendant and conducted a pat-down search.  The police officer found defendant to be in possession of a firearm and arrested him.  Defendant challenged the validity of the investigative stop and subsequent arrest.  The Illinois Supreme Court found insufficient suspicious circumstances to support an investigatory stop and affirmed a reversal of defendant's conviction.   The United Supreme Court reversed, holding that the police officer conducted a valid 
Terry 
stop.  The Court noted
 that it was not merely defendant's "presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police."  
Wardlow
, 528 U.S. ____, 145 L. Ed. 2d at 576, 120 S. Ct. at 676.  Recognizing that an officer's reasonable suspicion is not based on scientific certainty but on common sense, the Court concluded that the officer was "justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further."  
Wardlow
, 528 U.S. 
      
, 145 L. Ed. 2d at 577, 120 S. Ct. at 676.

The Court further acknowledged its previous decisions that found "when an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business." 
 Wardlow
, 528 U.S. ____, 145 L. Ed. 2d at 577, 120 S. Ct. at 676, citing 
Florida v. Royer
, 460  U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983).  The Court, however, determined that flight from an approaching police officer does not constitute conduct of a citizen merely minding his business, but is the opposite of such conduct, and can raise sufficient suspicion to warrant a 
Terry 
stop.  
Wardlow
, 528 U.S. ____, 145 L. Ed. 2d at 577, 120 S. Ct. at 676.  The Court cautioned, however, that following this type of 
Terry 
stop, "[i]f the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way."  
Wardlow
, 528 U.S. ____, 145 L. Ed. 2d at 577, 120 S. Ct. at 677.  
While the 
Wardlow
 Court expanded on the type of conduct that justifies a 
Terry
 stop and seizure, the Court's analysis remained consistent with the principle that
 
a 
Terry
 stop must be limited in scope and duration because an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.  
Wardlow 
referring to 
Royer
, 460 U. S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325. 

In this case, the totality of the circumstances, including defendant's unprovoked flight from

the Jeep upon seeing the approaching officers justified Officer Kuykendoll's and his partners' initial stop and pat-down search of defendant.  The search revealed no weapons or other contraband.  The issue, therefore, is whether the officers were justified in continuing to detain defendant after the initial stop and frisk revealed no weapons and no contraband.  The officers' conduct in detaining defendant, handcuffing defendant, removing him from the apartment, removing him from the building, and taking him to the parking lot must be considered in determining whether the investigative seizure went beyond the limited scope and duration of a 
Terry
 stop and became an unlawful arrest.

The State argues that defendant was not arrested until the discovery of drugs in the Jeep, and before that, the police officers could legally detain defendant as part of their investigation.  Defendant contends that the trial court's denial of the motion to suppress and the State's argument overlooks Officer Kuykendoll's testimony that he made a pat-down search of defendant in the apartment, found no drugs or weapons, handcuffed defendant, and placed defendant under arrest in the apartment.  Officer Kuykendoll testified that he arrested defendant in the apartment, handcuffed him, and although no weapons or contraband were found on his person, removed him from the apartment and brought him back to the parking lot.  Defendant argues that the investigatory 
Terry 
stop developed into an unlawful arrest unsupported by probable cause after the police handcuffed defendant and took defendant into their custody and control.

An arrest is said to occur where a person's freedom of movement has been restrained by physical force or a show of authority.  
People v. Melock
, 149 Ill. 2d 423, 436 (1992).  Section 107-

2(c) of the Code of Criminal Procedure authorizes an officer to arrest a person without a warrant when the officer "has reasonable grounds to believe that the person is committing or has committed an offense."  725 ILCS 5/107-2(c) (West 1996).  The relevant inquiry is whether, under the circumstances, a reasonable person would conclude that he was not free to leave.  
Melock
, 149 Ill. 2d at 437.  Placing handcuffs on an arrestee has been held to constitute an arrest (
People v. Maltbia
, 273 Ill. App. 3d 622, 628 (1995)) or an action that may convert an investigatory stop into a formal arrest.  
People v. Tortorici
, 205 Ill. App. 3d 625, 628 (1990).  Although this is not always the case (see, 
e.g.
, 
People v. Walters
, 256 Ill. App. 3d 231, 237 (1994); 
People v. Starks
, 190 Ill. App. 3d 503, 509 (1989) (
restraint may be necessary to effectuate detention and foster the safety of the officers)), we find that cases cited by the State fail to support its position that defendant was merely detained under 
Terry
 in the apartment and not arrested.  

In 
Walters
, the court found that, during a motor vehicle stop, the police did not exceed the scope of an investigative stop when, following a pat-down search, they handcuffed the occupants of the motor vehicle and placed them in the squad car.  According to the court, the officers reasonably detained the suspects to protect the officers' safety.  The officers were investigating an armed robbery, stopped a vehicle that contained individuals who matched the description of the suspects within three minutes of the crime, and had a reasonable belief that the suspects were armed. 
 Walters
, 256 Ill. App. 3d at 238.

The State also cites 
People v. Lippert
, 89 Ill. 2d 171 (1982), as authority.  In 
Lippert
, the police stopped a vehicle containing individuals that matched the description of suspects involved in a recent armed robbery.  The police transported the individuals to a hotel in order to see if the victims could identify them.  Although the court found that the police had probable cause to arrest the defendants following the traffic stop, the court also found the transportation of the defendants to the hotel was permissible as part of a 
Terry 
stop. 
 Lippert
, 89 Ill. 2d at 181-82.  The court reasoned that the police do not exceed the scope of a 
Terry 
stop when they detain suspects of a crime so witnesses nearby can identify them or for transportation to these witnesses for identification. 
 Lippert
, 89 Ill. 2d at 182.  Thus, both the 
Walters 
and 
Lippert
 courts found that the police conducted proper 
Terry
 stops and detentions because of specific and legitimate reasons for the type of detentions at issue, 
i.e.
, to protect the officers' safety from suspects matching the description of offenders involved in a dangerous crime or to obtain a quick identification of the suspects to confirm their involvement in the crime.  

Here, by contrast, the police had no specific and legitimate basis to continue to detain defendant.  We find, based on this record, that the arrest occurred when the officers handcuffed defendant in the third-floor apartment.  The officer testified to that effect (
Tortorici
, 205 Ill. App. 3d at 628), and the show of authority by the three uniformed armed police officers would permit a reasonable person to conclude that once he was handcuffed by the armed police officers he was not free to leave.  
Melock
, 149 Ill. 2d at 437.  

The next issue is, at the point in time when the police arrested defendant in the apartment, did the police have probable cause to justify placing defendant under arrest.  The probable cause requirement of the fourth amendment strikes a balance between the individual's right to privacy and the need for efficient law enforcement.  
People v. Moody
, 94 Ill. 2d 1, 7 (1983).  Decisions involving the exclusionary rule, based on the fourth amendment and the Illinois Constitution, require that we carefully balance the legitimate aims of law enforcement against the right of our citizens to be free from unreasonable governmental intrusion.  
People v. Tisler
, 103 Ill. 2d 226, 242-43 (1984); Ill. Const. 1970, art. I, §6.  Probable cause exists when police "'have knowledge of facts which would lead a reasonable man to believe that a crime has occurred and that it has been committed by the defendant.'"  
People v. Wright
, 111 Ill. 2d 128, 145 (1985), quoting 
People v. Eddmonds
, 101 Ill. 2d 44, 60 (1984).  While probable cause requires more than mere suspicion, it does not require evidence sufficient to convict the defendant.  
Moody
, 94 Ill. 2d at 7. 

Here, there was probable cause to arrest defendant if the facts known to Officer Kuykendoll at the time he handcuffed defendant in apartment No. 303 would warrant a man of reasonable caution to believe that a crime had been committed and that defendant committed it.  We, therefore, examine the facts known to Officer Kuykendoll when he arrested defendant.  At the time of the arrest Kuykendoll did not have an arrest or search warrant.  Kuykendoll did not see defendant commit any crimes before arresting him in the apartment.  Defendant did not possess any weapons or narcotics.  Kuykendoll conceded that he did not receive any information about defendant possessing or shooting a gun.

Kuykendoll admitted he did not see anyone fire a gun at any time before the arrest of defendant.  And while he was investigating what he thought were the sounds of gunshots, those sounds were coming from the vicinity of 5135 S. Federal Street.  In the parking lot at 5135 S. Federal, Kuykendoll observed a group of between 3 to 10 black males.  Kuykendoll and his partners were not acting on a description, but suspected someone in the group fired the gunshots. Kuykendoll testified that defendant was not a member of this group.  Kuykendoll and his partners lost that group after chasing them.  Kuykendoll and his partners then confronted defendant in a parking lot at 5100 S. State more then five minutes after they chased and lost the group from the parking lot at 5135 S. Federal.  In the parking lot at 5100 S. State, Kuykendoll and his partners did not find any weapons, bullets or shells.  It was from the parking lot at 5100 S. State that defendant, upon seeing the uniformed officers approach, ran away.  The officers chased defendant into the high-rise building at 5100 S. State.  Defendant ran into apartment No. 303.  Kuykendoll and his partners entered apartment No. 303 and arrested defendant inside the apartment.  

No evidence connected defendant with the building at 5135 S. Federal or with the original group of men chased by the police into that building from the parking lot at 5135 S. Federal.  No evidence connected defendant to the gunshots the police believed they heard.  Although no evidence connected defendant to the activity under investigation, the officers "felt" that defendant might have been involved in firing the shots they believed they heard.  Based on that feeling, they conducted the 
Terry
 stop and protective search of defendant and found nothing incriminating.  The stop and frisk of defendant did not confirm their suspicion.  Once the pat-

down search of defendant revealed no weapons and no contraband on defendant's person, the police had no basis to fear for their safety, had nothing to confirm their suspicion and had no specific and lawful reason to handcuff and further detain the defendant.  

A 
Terry
 stop and frisk "may not be used as a general search for evidence of criminal activity."  
People v. Creagh
, 214 Ill. App. 3d 744, 748 (1991).  After stopping and searching defendant
, the officers did not possess facts rising to the level of probable cause.  Therefore, they had no lawful authority to continue to detain defendant further or to force him to leave the apartment and accompany them to the parking lot.  The lawful purpose for the investigative 
Terry
 stop was over.  
Royer
, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1325.  As noted in 
Wardlow
, while a 
Terry
 stop is a minimal intrusion, allowing the officer to briefly investigate further, "If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way."  
Wardlow
, 528 U. S.___, 145 L. Ed. 2d at 577, 120 S. Ct. at 677.  Based on the totality of the circumstances known to the officers, the defendant should have been allowed to go on his way.  

We therefore conclude that officer Kuykendoll and his partners exceeded the scope of the detention allowed under 
Terry
 and 
Wardlow
.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.  The officers did not have a warrant for defendant's arrest or probable cause to effectuate it at that time and, therefore, we find that the arrest was illegal.  

II. Consent

This determination, however, does not dispose of the issue concerning the admissibility of the contraband discovered in the Jeep pursuant to defendant's consent.  The trial court noted that the search was consensual but this factor alone does not control the admissibility of evidence seized following the search of the Jeep.  The defendant contends the illegal arrest tainted defendant's consent to search the Jeep and requires suppression of the evidence.  
Royer
 addressed application of  the tainted fruit doctrine in the 
Terry
 context and concluded that, where an officer's detention of a person goes beyond the limited restraint of a 
Terry
 investigative stop, a subsequent consent to search may be found to be tainted by the illegality.  
Royer
, 460 U. S. at 501, 75 L. Ed. 2d at 238-39, 103 S. Ct. at 1326, citing 
Wong Sun v. United States
, 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).  Although a defendant may have voluntarily given the police consent to search, the police may have obtained the consent by the exploitation of an illegal arrest and, in doing so, violated the defendant's fourth amendment rights. 
 People v. Odom
, 83 Ill. App. 3d 1022 (1980).  Thus, consent to search following an illegal detention may be found to have been tainted by the illegality and require suppression of any evidence found pursuant to the illegally obtained consent.  
People v. Brownlee
, 186 Ill. 2d 501, 521 (1999).

In 
Brownlee
, our supreme court recently considered whether following a lawful traffic stop, the officers' continued detention of a car and its occupants was illegal and 
tainted the motorist's subsequent consent to search the car.  The supreme court concluded that the police officer's detention of the motorist for a few minutes after deciding not to issue any citations 
subjected the driver and his passenger to a seizure.  
Brownlee
, 186 Ill. 2d at 521.  The court affirmed the trial court's holding that the officers continued detention of the defendant after the lawful traffic stop ended was unconstitutional because it was unreasonable.  In doing so the court noted that the State waived the right to challenge the trial court's holding because the State made no attempt to show that the officers' continued detention was reasonable, objectively justified or "sufficiently limited in scope or duration" to satisfy the conditions of a 
Terry
 investigative seizure.  
Brownlee
, 186 Ill. 2d at 521.  Relying on 
Royer
, the court noted that "where an officer's confinement of a person goes beyond the limited restraint of a 
Terry
 investigative stop, a subsequent consent to search may be found to be tainted by the illegality." 
 Brownlee
, 186 Ill. 2d at 519, citing 
Royer
, 460 U.S. at 501, 75 L. Ed. 2d at 238-39, 103 S. Ct. at 1326.    

In this case, the trial court never reached the issue of the validity of defendant's consent to search the Jeep because the court found the police conduct reasonable.  The State maintains that the defendant's arrest was legal and therefore defendant's consent was not illegally obtained.  Having found that defendant was illegally arrested before he gave the consent to search, we address whether defendant's consent was obtained through the exploitation of the unlawful arrest.  In making this determination, we utilize the four factors set forth in 
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975)
.  These factors are (1) the giving of 
Miranda
 warnings; (2) the temporal proximity of the arrest and consent; (3) the presence of any intervening circumstances; and (4) the purpose and flagrancy of the official misconduct.  
Brown
, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62. 

No extensive analysis is required here where the record shows that defendant was not advised of his 
Miranda
 rights before giving the officers consent to search the Jeep within minutes of his arrest.  There were also no intervening circumstances between the illegal arrest and this consent, which were close in time.  Moreover, as noted in 
Brown
, when police embark on an investigation in the hope that some incriminating evidence might be found the illegality has a quality of purposefulness. 
 
Brown
, 422 U.S. at 
605, 45 L. Ed. 2d at 428, 95 S. Ct. at 2262.  Here, 
the conduct of the police in detaining defendant, handcuffing defendant, removing him from the apartment, removing him from the building, bringing him to the parking lot, and questioning him in the parking lot has the quality of purposefulness identified in 
Brown 
as a factor to be considered in determining whether consent was obtained by exploitation of an illegal arrest.  
Brown
, 422 U.S. at 
604, 45 L. Ed. 2d at 427, 95 S. Ct. at 2262.  
In light of the foregoing, we conclude that defendant's consent to search was tainted by his illegal arrest and that the contraband found in the car should have been suppressed.  
People v. Harris
, 159 Ill. App. 3d 592, 596 (1987).

                                                                CONCLUSION

Under 
Terry
 and its progeny, the State has the burden of showing that an investigative detention based on reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of a 
Terry
 investigative seizure.
  
Royer
, 460 U.S. at 500, 75 L. Ed. 2d at 238, 103 S. Ct. at 1326.  Based on this record, the State has failed to show that the officers' detention was sufficiently limited in scope and duration to satisfy the conditions of a 
Terry
 investigative seizure.  We find the initial lawful investigatory 
Terry
 stop developed into an unlawful arrest unsupported by probable cause.  The subsequent consent to search was tainted by the illegality of the arrest and the evidence found pursuant to the illegally obtained consent is suppressed.  

Therefore, we hold that the trial court erred in denying defendant's motion to quash his arrest and suppress evidence.  For the foregoing reasons, the arrest of defendant and search of his vehicle were constitutionally infirm.  U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6.  The controlled substance that was the basis for defendant's conviction should have been suppressed as the product of the unconstitutional seizure of his person.  
Wong Sun
, 371 U.S. at 488, 9 L. Ed. 2d at 455, 83 S. Ct. at 417.  Rather than remanding, we reverse defendant's conviction outright because the State will not be able to prevail without the recovered evidence.  
People v. Evans
, 259 Ill. App. 3d 650, 659 (1994).  Consequently, there is no double jeopardy problem to consider.  
People v. Villareal
, 201 Ill. App. 3d 223 (1990).  The judgment of the circuit court is reversed.

Reversed.  

RAKOWSKI and GALLAGHER, JJ., concur.