2022 IL App (3d) 200450

Opinion filed September 1, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Henry County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0450 Circuit No. 18-CF-184 |
| GARY D. WORKHEISER, | ) ) ) | Honorable Terence M. Patton, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justices Holdridge and Daugherity concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Gary D. Workheiser, appeals from his conviction for aggravated driving under the influence of alcohol (DUI). Defendant argues that the Henry County circuit court erred in failing to suppress the evidence uncovered because of his unlawful arrest where the officer did not have probable cause to arrest him for DUI. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        The State charged defendant with four counts of aggravated DUI stemming from a May 6, 2018, incident. Count I and count III, which are at issue in this appeal, alleged defendant drove a

vehicle while under the influence of alcohol and had committed a DUI violation "for the third or subsequent time." 625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(B), (d)(2)(C) (West 2018).

¶ 4 Defendant filed a motion to suppress evidence and quash arrest, arguing that (1) the odor of an alcoholic beverage alone is insufficient to indicate intoxication, (2) the horizontal gaze nystagmus (HGN) test was administered incorrectly, (3) he was placed under arrest following an improper HGN test that was conducted without probable cause, (4) the postarrest walk-and-turn test and one-leg stand tests were administered incorrectly, and (5) the breath test was administered incorrectly.

¶ 5 At the hearing, Officer Christopher Lafriniere of the Colona Police Department testified that on May 6, 2018, he observed defendant's vehicle fail to stop as it exited a parking lot. As Lafriniere approached defendant's vehicle, he observed defendant cross the fog line and travel back across the lane, touching the center line. At this point, he initiated a traffic stop. This portion of events was not captured by the dash camera in his squad vehicle. Lafriniere followed defendant with his lights and sirens activated as defendant made a wide left turn onto 5th Street. Defendant then made another wide left turn into a 7-Eleven parking lot. Defendant parked and tried to enter the gas station. Lafriniere and Sergeant Tom Wiley of the Colona Police Department ordered defendant to return to the vehicle.

¶ 6 Lafriniere asked defendant for his driver's license and insurance card. Defendant had difficulty providing the requested items. He fumbled with his wallet, dropping it several times. Defendant indicated to Lafriniere that the address on his driver's license was correct, then advised him it was not the correct address when Lafriniere read the address back to defendant. When asked why he delayed in pulling over, defendant indicated that he did not see Lafriniere's lights or hear the siren. Lafriniere smelled the odor of an alcoholic beverage. Defendant admitted to consuming

2

three beers. Lafriniere ordered defendant out of the vehicle to perform field sobriety tests. A bottle of Vicodin was discovered on defendant's person.

¶ 7    Lafriniere began field sobriety testing by administering the HGN test. Lafriniere explained the guidelines and what he was looking for while administering that test. Lafriniere can be heard on the video recording repeatedly instructing defendant to follow his finger with his eyes only. Lafriniere testified that he made a mistake during the HGN testing and admitted that the reliability of a test is affected when it is not performed according to the guidelines.

¶ 8    After completing the HGN test, defendant disclosed to Lafriniere that he had age-related issues with his knees. When Lafriniere asked defendant if he had any documented medical issues with his knees, he replied that he did not, just that he was 48 years old. Defendant refused to complete any further field sobriety tests. At this point, Lafriniere handcuffed defendant and informed him that he was under arrest. After being handcuffed, defendant asked to be able to complete the remaining field sobriety tests. Lafriniere uncuffed defendant and completed the walk-and-turn test. As Lafriniere began to instruct defendant on the one-leg stand test, defendant again mentioned his knee issues to which Lafriniere told defendant "he doesn't have to do the test but I—I was going to be placing him under arrest." Lafriniere explained that he had already placed defendant under arrest after the completion of the HGN test. Defendant completed the one-leg stand test. He demonstrated indicators of impairment on both the walk-and-turn and one-leg stand tests and was placed back into handcuffs and into the squad vehicle for transport to the police station.

¶ 9    Lafriniere testified that defendant was very argumentative throughout the administration of the field sobriety tests. Lafriniere stated that he "had to constantly repeat [his] instructions throughout the entire duration of the arrest." Based on defendant's confusion over his address,

dexterity issues, slurred speech, performance on field sobriety tests, and the odor of an alcoholic beverage, Lafriniere believed defendant to be under the influence of alcohol.

¶ 10    Lafriniere transported defendant to the police station where Illinois State Trooper David Jacobs completed the breath testing. The breath test was administered twice. The first test was invalidated by the discovery of a piece of gum in defendant's mouth. The second breath test was administered short of the required 20-minute observation period.

¶ 11    Dr. Ronald Henson testified on behalf of defendant as an expert in the field of standardized field sobriety testing related to the detection of alcohol-impaired drivers and breath alcohol testing. He opined the HGN test was not performed correctly. Before he could elaborate, the court interrupted to ask the State whether they would be arguing for the admission of the HGN results considering Lafriniere's admission that he made a mistake during its administration. The State indicated that they would not be arguing for the admission of the HGN results.

¶ 12    Henson continued to address the remaining field sobriety tests. He explained that, according to the National Highway Traffic Safety Administration, officers should inquire as to any issues the person may have with their back, leg, or inner ear. Physical problems in such areas can affect the reliability of the test, as they create difficulty in determining whether a poor performance is a result of intoxication or a medical condition.

¶ 13    Further, Henson explained how a breath test should be administered. The person being tested should have their mouth checked for foreign substances that may impact the results of the test at both the beginning and end of the 20-minute observation period.

¶ 14    After Henson completed his testimony, defendant rested. The State called Wiley, Jacobs, and Lafriniere to testify. Jacobs testified that he travelled to the Colona Police Department to administer a breath test to defendant. Upon his arrival, he was informed that Lafriniere had begun

the required 20-minute observation period. Jacobs discovered that defendant had chewing gum in his mouth. He removed the gum and began a new 20-minute observation period. At the conclusion of the 20 minutes, he administered the breath test. The machine was functioning properly that night.

¶ 15　　At the close of the hearing, defendant argued that the HGN test was administered incorrectly, by Lafriniere's own admission. Further, defendant argued that the evidence clearly showed that Lafriniere made the arrest because of the results of the incorrectly administered HGN test, citing Lafriniere's comments to defendant that he could "tell because of [defendant's] eyes. [He was] going to arrest [defendant] because of [his] eyes." Additionally, defendant argued that the other field sobriety tests were not reliable because of defendant's knee problems and Lafriniere's failure to inquire about any other conditions defendant may be afflicted with. Finally, defendant argued that the breath test was inadmissible because the officers did not complete the required 20-minute observation period. The State argued that Lafriniere had probable cause to believe defendant was operating a motor vehicle based on a totality of the circumstances, where Lafriniere observed multiple traffic violations, defendant admitted to drinking, there was an odor of an alcoholic beverage, and defendant had attempted to enter the gas station upon being stopped by police.

¶ 16　　When rendering its ruling, the court stated, "This case, this is kind of unusual, because the officer said, 'You're under arrest,' put the cuffs on, and then when the defendant said he wanted to do the other tests, he uncuffed him and let him do it. Does that mean he's unarrested? I'm not really sure on that." The court explained that a probable cause determination is tested on a totality of the circumstances. The court noted that Lafriniere observed several traffic violations, and the odor of an alcoholic beverage and defendant's dexterity issues indicated that defendant had been

5

drinking. The court found the HGN test was inadmissible due to its incorrect administration; however, the court noted that defendant exhibited a difficulty in understanding the instructions for the test as Lafriniere had to repeatedly explain the instructions. The court determined, based on its observations of defendant, that defendant had no observable problems with his knees and had exhibited indicators of impairment on the walk-and-turn and one-leg stand tests that would not have been caused by knee problems. The court denied the motion to suppress the evidence of the stop based on a lack of probable cause to arrest defendant for DUI. Finally, the court found that the officers had not waited the required 20 minutes before administering the breath test and granted the motion to suppress the breath test.

¶ 17　　　　Defendant filed two motions to reconsider, arguing that the determination of probable cause should have ended at the time of his arrest after the HGN test and prior to the administration of the remaining two field sobriety tests. He asked the court to reconsider its consideration of factors that occurred after defendant's initial arrest. Further, defendant argued that the odor of an alcoholic beverage, admission to drinking alcohol, slurred speech, dexterity issues, and confusion regarding the address on his driver's license is not enough to constitute probable cause in the absence of corroborating evidence such as poor or erratic driving, stumbling, falling, or an inability to communicate. He argued that the video recording only showed two wide left turns and no other traffic offenses and, therefore, could not be considered poor or erratic. The court denied defendant's motions to reconsider.

¶ 18　　　　Defendant waived his right to a jury trial, and the case proceeded to a bench trial on counts I and III. The court found defendant guilty on both counts.

¶ 19　　　　New defense counsel filed an amended motion for new trial, alleging that there was insufficient evidence to support a finding of guilty and that trial counsel was ineffective for failing

to inquire about Lafriniere's qualifications for being able to identify if someone is under the influence of drugs or alcohol. The amended motion for new trial was denied.

¶ 20 The court sentenced defendant to three years' imprisonment. Defendant appeals.

¶ 21         II. ANALYSIS

¶ 22 Defendant argues that Lafriniere did not have probable cause to arrest him for DUI and the court erred in denying his motion to suppress evidence. This court employs a two-part standard in reviewing a circuit court's denial of a motion to suppress. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The court's factual findings are accepted unless they are manifestly erroneous. *Id.* Whether the motion to suppress was properly denied is reviewed *de novo*. *Id.*

¶ 23 As an initial matter, defendant acknowledges that the issue is forfeited. Defendant seeks to avoid this forfeiture by arguing posttrial counsel provided ineffective assistance in failing to preserve the issue or the issue is a reversible first prong plain error. We begin by determining if posttrial counsel provided ineffective assistance.

¶ 24 Every defendant has a constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish ineffective assistance of counsel, defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) that the substandard representation prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[I]f the underlying claim has no merit, no prejudice resulted, and petitioner's claims of ineffective assistance of counsel *** on direct appeal must fail." *People v. Pitsonbarger*, 205 Ill. 2d 444, 465 (2002). "A reviewing court may reject a claim of ineffective assistance of counsel by finding that petitioner was not prejudiced by counsel's

representation without determining whether counsel's performance was deficient." *People v. Cloutier*, 191 Ill. 2d 392, 398 (2000). Accordingly, the first step in our analysis is to determine whether Lafriniere had probable cause to arrest defendant prior to his arrest for DUI.

¶ 25                                    A. Defendant's Arrest

¶ 26        Defendant states that he was placed under arrest after completing the HGN test. He was subsequently uncuffed and allowed to complete two more field sobriety tests, at the end of which he was again handcuffed and transported to the police station. Defendant argues that the results of the two field sobriety tests performed after he was arrested should not be considered for the purposes of probable cause. We find that defendant was arrested after the HGN test and remained under arrest even after he was unhandcuffed to complete the subsequent field sobriety tests.

¶ 27        "An arrest occurs when a person's freedom of movement has been restrained by means of physical force or show of authority." *People v. Reed*, 298 Ill. App. 3d 285, 298 (1998). "While the determinative test is subjective, the supreme court has held that the essential elements of an arrest are (1) the intent of the police to make the arrest, and (2) the defendant's understanding, based on an objective standard of reasonableness, that he is in fact under arrest." *People v. Smith*, 2013 IL App (3d) 110477, ¶ 16.

¶ 28        Here, the record plainly indicates that Lafriniere placed defendant under arrest after he completed the HGN test and refused to complete further field sobriety testing. Lafriniere testified that he placed defendant under arrest, told him he was under arrest, and handcuffed him. There is no argument that defendant was not under arrest at that point. See *People v. Tortorici*, 205 Ill. App. 3d 625, 628 (1990) ("We cannot imagine what more an officer would do to accomplish an arrest than to advise the arrestee, to handcuff him, and to strap him into the police car with the seat belt.").

8

¶ 29      The circuit court, in its ruling on the motion to suppress, commented that it was uncertain if a person could be "unarrested." For an individual to no longer be considered under arrest, the circumstances must change to the point where a reasonable, innocent person would consider himself free to leave. See *People v. Reynolds*, 94 Ill. 2d 160, 165 (1983) ("In determining whether an arrest took place the question is *** under the circumstances, *** whether a reasonable, innocent person in the defendant's situation would have considered himself arrested or free to go.").

¶ 30      In the instant case, after being placed under arrest, defendant requested the chance to complete the remaining field sobriety tests. Lafriniere removed the handcuffs and allowed defendant to do so. After being uncuffed, defendant again mentioned his knee issues prior to performing the walk-and-turn test to which Lafriniere told defendant: "he doesn't have to do the test but I—I was going to be placing him under arrest." No change in circumstance occurred from the time defendant was uncuffed to the time he was again handcuffed and escorted to the police station. The record clearly indicates that at no time after the initial arrest would defendant have been free to leave. Accordingly, defendant was arrested after performing the HGN test, and no testing that occurred after his arrest may be considered in determining Lafriniere's probable cause to arrest defendant for DUI. See *People v. Motzko*, 2017 IL App (3d) 160154, ¶ 31 (postarrest actions cannot be relied upon as probable cause for a defendant's arrest).

¶ 31                                    B. Probable Cause

¶ 32      Defendant next argues that Lafriniere did not have probable cause to effectuate the arrest where the odor of an alcoholic beverage on defendant's breath, admission to drinking, and glassy and bloodshot eyes were insufficient to justify probable cause for a DUI without other evidence to support impairment. See *People v. Day*, 2016 IL App (3d) 150852, ¶ 38; *Motzko*, 2017 IL App

9

(3d) 160154, ¶ 23. We find the evidence was sufficient to support a finding of probable cause for defendant's arrest for DUI.

¶ 33    "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *People v. Love*, 199 Ill. 2d 269, 279 (2002). Such a determination depends on a totality of the circumstances at the time of arrest. *Id.* Probable cause must rise to a level higher than mere suspicion. *E.g.*, *People v. Boomer*, 325 Ill. App. 3d 206, 209 (2001). It must also rise to a level higher than "reasonable, articulable suspicion," the lesser standard required to justify an investigatory stop, rather than a full arrest. *E.g.*, *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

¶ 34    Here, the totality of the evidence, prior to arrest, showed that defendant (1) exhibited poor driving where he crossed the fog line then drifted back to touch the center line and made two wide left turns; (2) tried to enter the gas station after being stopped by police; (3) admitted to drinking three beers; (4) exhibited confusion and difficulty following directions; (5) had slurred speech; and (6) had dexterity issues, fumbling with and dropping his wallet. This evidence established probable cause to arrest defendant, as a reasonably cautious person would have believed defendant was operating his vehicle under the influence of alcohol.

¶ 35    In coming to this conclusion, we are unpersuaded by defendant's reliance on *Day* and *Motzko*. In both cases, we found that the odor of an alcoholic beverage, admission to drinking alcohol, and glassy and bloodshot eyes are insufficient to create probable cause for a DUI arrest without evidence of other factors to support impairment, such as poor driving, stumbling, falling, or an inability to communicate. *Day*, 2016 IL App (3d) 150852, ¶¶ 23, 37-38; *Motzko*, 2017 IL App (3d) 160154, ¶ 23. However, these cases are distinguishable from the instant case.

¶ 36 The defendant in *Day* exhibited driving that "had been nothing short of perfect" and "was able to communicate clearly and effectively" with the officer. *Day*, 2016 IL App (3d) 150852, ¶ 37. The defendant in *Motzko* exhibited a slight odor of an alcoholic beverage and seemed truthful to the officer when he admitted to having only one drink. *Motzko*, 2017 IL App (3d) 160154, ¶ 22. No testimony or evidence was presented regarding other factors that might support impairment. *Id.* ¶ 23. Here, other factors were present that established defendant's impairment—slurred speech, dexterity issues, confusion, and difficulty following instructions. While any one of these individual factors may be insufficient to justify defendant's arrest, viewed together they support a finding of probable cause.

¶ 37 Under the circumstances, we conclude that Lafriniere had probable cause to believe that defendant had been operating a motor vehicle while under the influence of alcohol, and we find that the court did not err in denying defendant's motion to suppress evidence and quash arrest. Consequently, the claim is meritless, and defendant suffered no prejudice for posttrial counsel's failure to raise it in posttrial motions. Neither can defendant establish plain error where no error has occurred. *People v. Wilson*, 404 Ill. App. 3d 244, 247 (2010).

¶ 38                                    III. CONCLUSION

¶ 39 The judgment of the circuit court of Henry County is affirmed.

¶ 40 Affirmed.

11

*People v. Workheiser*, 2022 IL App (3d) 200450

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, No. 18-CF-184; the Hon. Terence M. Patton, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Catherine Runty, State's Attorney, of Cambridge (Patrick Delfino, Thomas D. Arado, and Korin I. Navarro, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |