No. 1-09-0518

FIFTH DIVISION
December 23, 2010

No. 1-09-0518

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| | ) | |
| | ) | |
| | ) | No. 07 CR 05097 |
| v. | ) | |
| | ) | |
| RON JOHNSON, | ) | Honorable |
| | ) | Mary M. Brosnahan, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE JOSEPH GORDON delivered the judgment of the court, with opinion.

Justices Howse and Epstein concurred in the judgment and opinion.

**<u>OPINION</u>**

Defendant, Ron Johnson, was arrested for aggravated unlawful use of a weapon, and the trial court granted defendant's motion to quash that arrest and suppress evidence on the ground that he was improperly restrained by handcuffs during his search . On appeal, the State contends that the trial court erred in granting defendant's motion to quash arrest and suppress evidence because: (1) the officers properly detained and searched defendant pursuant to an investigatory

No. 1-09-0518

Terry stop;  and (2) the arresting officers had probable cause to arrest defendant for obstructing a peace officer.  For the following reasons, we disagree with the State's contention that the arresting officer properly handcuffed and searched defendant pursuant to an investigatory stop, but agree with the State that the officer had probable cause to arrest defendant for obstructing a peace officer.  Therefore, handcuffing defendant at the time of his apprehension was lawful.

BACKGROUND

On February 28, 2007, defendant was charged with nine counts of aggravated unlawful use of a weapon, arising from an incident which occurred on February 19, 2007.  In response to the charges, defendant filed a motion to quash arrest and suppress evidence in which he alleged that his arrest was made without the authority of a valid search or arrest warrant and without probable cause.

A hearing on defendant's motion to quash arrest and suppress evidence was held on October 10, 2008.  At the hearing, Chicago police officer Marian Hartley testified that on the evening in question, she was on patrol in plainclothes with Officer Kevin Rake in an unmarked police vehicle, in a high-crime area targeted for aggressive patrol.  At 9:46 p.m., Officer Hartley made a traffic stop of an older, white, four-door Chevy at 71st Street and Hoyne Avenue, after the car failed to come to a complete stop at a stop sign.  After Officer Hartley activated the car's emergency lights, the Chevy pulled over and both officers exited their vehicle.  As Officer Hartley approached the Chevy, all she could see was the back of the heads of the two individuals sitting in the car, and she could not see if either of them had any weapons or drugs.  Aside from the traffic violation, Officer Hartley did not see the two occupants of the vehicle break any laws.

-2-

No. 1-09-0518

As Officer Hartley was about to ask the driver for his license, defendant, who was in the passenger seat, exited the vehicle and started running. She testified that less than a second or two elapsed between the time that she walked up to the vehicle and the time that defendant ran out of the passenger side. Officer Hartley did not expect defendant to run out of the vehicle, and did not see anything in defendant's hands or on his person, and the officer testified that she did not know why he was running. She immediately got into the police vehicle and started to follow defendant, while Officer Rake ran after him. Officer Rake caught defendant less than a block away, and the officers then detained and handcuffed him for officer safety. At that point, Officer Rake did a protective pat down and discovered a gun on the front side of defendant's waistband. The pat down that Officer Hartley observed her partner perform consisted of moving his hand across defendant's waist. Officer Hartley further testified that the police officers put handcuffs on defendant because they were in a high-crime area, replete with general crime, narcotic and gang activity, and did not know what defendant had on his person or why he was fleeing. Defendant was placed into custody after the officers found the gun, and Officer Rake then performed a custodial search of defendant. When the officers returned to the scene where they had stopped the white Chevy, the driver had left.

Officer Hartley acknowledged giving her testimony at a preliminary hearing on February 26, 2007. According to defendant, that testimony implied that defendant's pat down was performed after he was taken into custody. The officer admitted that she had previously testified as follows:

"A. My partner started to follow [defendant] on foot, and I drove around

-3-

and we eventually apprehended him and placed him into custody.

Q. Was a pat down custodial search performed?

A. Yes.

Q. What was discovered?

A. One nine millimeter steel handgun."

Although her previous testimony may have suggested that the search was incident to an arrest, Officer Hartley stated, at the hearing on the motion to quash arrest and suppress evidence, that when the officers put handcuffs on defendant and performed the protective pat down, he was not officially under arrest. She also testified that she and her partner prepared a police report after the incident, which stated:

"RO then conducted an officer safety check of [defendant's] person which revealed one Larson nine millimeter blue steel handgun with a live round in the chamber and three in the magazine. RO located stated handgun in the front waistband of [defendant]. RO placed [defendant] into custody, read him his Miranda and transported him to the 7th District for processing."

Following Officer Hartley's testimony, the defense rested and the State made a motion for directed verdict, which the trial court denied. The State then rested. After closing arguments, the trial court stated that defendant's flight from the vehicle that was involved in the traffic stop in a high-crime area warranted the police officers to do an investigatory stop of defendant. The court subsequently stated that it had "not been given a reason to justify that cuffing which occurred prior to the protective pat down, so [the court found] that was an arrest without probable cause."

No. 1-09-0518

Accordingly, the trial court granted defendant's motion to quash arrest and suppress the handgun. The State subsequently filed a motion to reconsider, which was denied. Thereafter, the State filed a certificate of substantial impairment and a notice of appeal, and later filed a motion for leave to a file late notice of appeal docketed under No. 1-09-0518 and a late notice of appeal.

ANALYSIS

On appeal, the State contends that the trial court erred in granting defendant's motion to quash arrest and suppress evidence because there was probable cause to arrest defendant for obstructing a peace officer after defendant suddenly fled from a valid traffic stop as officers approached. Alternatively, the State argues that even if the officers did not have probable cause to arrest defendant, they properly detained and searched defendant pursuant to a *Terry* investigatory stop.

Defendant responds that although the officers had the right to detain him pursuant to a *Terry* stop, there was no evidence to support a finding of probable cause to arrest or that the pat down search was justified. Defendant also maintains that the trial court correctly found that handcuffing him converted the stop into an illegal arrest.

As explained below, we disagree with the State's contention that handcuffing defendant was a proper restraint during a *Terry* stop. However, we agree with the State that the officers had probable cause to arrest defendant at the time of his apprehension, so that further restraint became proper to effectuate the arrest.

The trial court's findings of fact pursuant to a motion to quash arrest and suppress evidence will be upheld on appeal unless those findings are against the manifest weight of the

-5-

evidence. *People v. Pitman*, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100-01 (2004); *People v. Moore*, 378 Ill. App. 3d 41, 46, 880 N.E.2d 229, 233 (2007). This deferential standard recognizes that the trial court is in a superior position to determine the credibility of the witnesses and weight to be given their testimony, observe their demeanor, and resolve conflicts in their testimony. *Pitman*, 211 Ill. 2d at 512, 813 N.E.2d at 100-01. Nevertheless, although we are deferential to findings of fact made by the trial court, we review *de novo* the application of the law to those facts to determine if suppression is warranted under those facts. *People v. Gherna*, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003). Accordingly, the supreme court has held that the trial court's ultimate determinations with respect to probable cause or reasonable suspicion are reviewed *de novo*. *People v. Sorenson*, 196 Ill. 2d 425, 431, 753 N.E.2d 1078, 1083 (2001) (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Having addressed the standard of review, we can now turn to the substantive issues involved in this appeal. We first address the question of whether the trial court erred in finding that Officer Rake's actions in handcuffing defendant before moving his hand across defendant's waist constituted an arrest, rather than a *Terry* stop.

The fourth amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches [and] seizures." U.S. Const., amend. IV. Similarly, the Illinois Constitution provides citizens with "the right to be secure in their persons, houses, papers, and other possessions against unreasonable searches and seizures." Ill. Const. 1970, art. I, §6. Reasonableness, under those provisions, requires that "[a]n arrest executed without a warrant is valid only if supported by

No. 1-09-0518

probable cause." *People v. Jackson*, 232 Ill. 2d 246, 274-75, 903 N.E.2d 388, 403 (2009). However, a limited exception to that requirement was recognized by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 22 (1968), where the Court held that a police officer, under appropriate circumstances, may briefly stop a person for investigatory purposes and, if necessary for safety, conduct a limited protective search for weapons. See also *People v. Flowers*, 179 Ill. 2d 257, 262, 688 N.E.2d 626, 629 (1997). Under this exception, a police officer may briefly detain an individual for temporary questioning if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22. Further, if the officer reasonably believes that the person detained is armed and dangerous, the officer may subject the person to a limited search for weapons, commonly referred to as a "frisk." *Terry*, 392 U.S. at 24. In addition, the Supreme Court has held, in *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000), that when an individual flees from police in a high-crime area, a police officer has the requisite reasonable suspicion that the individual was involved in criminal activity to conduct a *Terry* stop.

In this case, defendant ran from police officers in an area that no one disputes was replete with general crime, but also narcotic and gang activity. Considering that the stop took place in a high-crime area, and defendant fled from the police officers when they approached the vehicle in which he was a passenger, we agree with the trial court that under *Wardlow*, the officers had the requisite reasonable suspicion to detain defendant for a *Terry* investigatory stop. Defendant does not challenge the trial court's finding that the officers were justified in detaining him for temporary questioning, but maintains that the officers did not have a reasonable belief that he was armed and dangerous, as required before conducting a protective pat down. Moreover,

-7-

defendant urges that the trial court was correct in ruling that he was arrested when Officer Rake handcuffed him, and therefore, the protective pat down was performed after an arrest. The State contends that the officers were justified in stopping and frisking defendant to ensure officer safety because he fled from police during a traffic stop in a high-crime area. Further, the State maintains that the officers acted reasonably in handcuffing defendant for officer safety when they detained him and that such did not constitute an arrest. For the reasons below, we agree with defendant that the trial court was correct in finding that the handcuffing of defendant constituted an arrest.

In addressing the issue of whether the handcuffing of defendant constituted an arrest, we note that the supreme court has held that an arrest occurs when a person's freedom of movement has been restrained by means of physical force or a show of authority. *People v. Melock*, 149 Ill. 2d 423, 436-37, 599 N.E.2d 941, 946 (1992). Although a person detained pursuant to a *Terry* stop is no more free to leave than if he were placed under full arrest (*People v. Paskins*, 154 Ill. App. 3d 417, 422, 506 N.E.2d 1037, 1040 (1987)), a *Terry* stop must be limited in scope and duration because it is an investigative detention, which must be temporary and last no longer than necessary to effectuate the purpose of the stop (*Florida v. Royer*, 460 U.S. 491, 500 (1983)). Moreover, a restriction of movement that is brief may amount to an arrest rather than a *Terry* stop if it is accompanied by use of force usually associated with an arrest, unless such use of force was reasonable in light of the circumstances surrounding the stop. See *People v. Delaware*, 314 Ill. App. 3d 363, 370, 731 N.E.2d 904, 911 (2000); *People v. Starks*, 190 Ill. App. 3d 503, 509, 546 N.E.2d 71, 76 (1989). For instance, courts have held that handcuffing is the type of

action that may convert an investigatory stop into an arrest because it heightens the degree of intrusion and is not generally part of a stop. *People v. Wells*, 403 Ill. App. 3d 849, 857, 934 N.E.2d 1015, 1024 (2010); *Delaware*, 314 Ill. App. 3d at 370, 731 N.E.2d at 911; *People v. Tortorici*, 205 Ill. App. 3d 625, 628, 563 N.E.2d 1230, 1231-32 (1990). However, handcuffing is proper during an investigatory stop only when it is a necessary restraint to effectuate the stop and foster the safety of the officers. See, *e.g.*, *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76.

Consistent with this analysis, the court in *Delaware*, 314 Ill. App. 3d at 370, 731 N.E.2d at 911, and *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32, found that the use of handcuffs was part of an arrest where the police had no indication that defendant was armed and dangerous at the time so as to justify that restraint for reasons of safety. Correspondingly, in *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76, the court held that the use of handcuffs was not an arrest, after finding it was reasonable within the bounds of a *Terry* stop in a detention where the police had reason to believe defendant was armed after matching him to a robbery suspect's description.

In *Delaware*, 314 Ill. App. 3d at 370, 731 N.E.2d at 911, the court held that handcuffing defendant converted a justified *Terry* stop into an illegal arrest because at that time, police had found no weapons or contraband on his person and had no reasonable basis for their action. In that case, three police officers heard gunshots coming from the vicinity of a building, drove to the parking lot of that building, and chased several men inside it, but lost them in the staircase. *Delaware*, 314 Ill. App. 3d at 365, 731 N.E.2d at 907. The officers then returned to the parking lot and spotted a white jeep in another parking lot. *Delaware*, 314 Ill. App. 3d at 365, 731

N.E.2d at 907. As the officers approached the jeep, a man exited the vehicle and ran into a building by that parking lot. *Delaware*, 314 Ill. App. 3d at 365, 731 N.E.2d at 907. The officers chased him until an apartment on the third floor, where they stopped the man and conducted a protective search, but they found no weapons or controlled substances on him. *Delaware*, 314 Ill. App. 3d at 366, 731 N.E.2d at 907. Inside the apartment, the officers handcuffed defendant and took him back into the parking lot, where he consented to a search of his car, from which the officers retrieved cocaine. *Delaware*, 314 Ill. App. 3d at 366, 731 N.E.2d at 907-08.

The court, in ruling that the trial court erred in denying defendant's motion to suppress evidence, found that the officers were justified to detain that defendant for a *Terry* stop, but that handcuffing him constituted an arrest without probable cause, and it stated:

"[T]he police had no specific and legitimate basis to continue to detain defendant. We find, based on the record, that the arrest occurred when the officers handcuffed defendant in the third-floor apartment. The officer testified to that effect [citation], and the show of authority by the three uniformed, armed police officers would permit a reasonable person to conclude that once he was handcuffed by the armed police officers he was not free to leave." *Delaware*, 314 Ill. App. 3d at 371, 731 N.E.2d at 912.

Similarly, the court in *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32, found that a *Terry* stop was converted into an arrest when an officer handcuffed defendant and told him that he was under arrest, because, at that point, the officer had found no weapons on defendant, which would have justified such an action. In that case, defendant's car collided with a pickup

truck after he fell asleep while driving, and a state trooper came to the scene and asked both drivers to get into the police car to answer questions. *Tortorici*, 205 Ill. App. 3d at 626, 563 N.E.2d at 1231. When the officer told defendant to take anything of value from his inoperable car, defendant picked up a jacket, with both palms up, and laid it across his knees. *Tortorici*, 205 Ill. App. 3d at 627, 563 N.E.2d at 1231. Defendant refused to answer when the officer asked if he had any weapons or contraband, and the officer reached over, picked up the jacket and told defendant to exit the car. *Tortorici*, 205 Ill. App. 3d at 627, 563 N.E.2d at 1231. At that time, the officer noticed that the jacket was heavy and there was something inside it, but he did not observe any weapons or contraband inside the jacket. *Tortorici*, 205 Ill. App. 3d at 627, 563 N.E.2d at 1231. The officer then did a pat down search of defendant, told him that he was under arrest, put handcuffs on his wrists behind his back, took him to the police car, and fastened his seat belt. *Tortorici*, 205 Ill. App. 3d at 627, 563 N.E.2d at 1231. The police officer then searched defendant's jacket and found a loaded gun, a knife and a cocaine pipe. *Tortorici*, 205 Ill. App. 3d at 627, 563 N.E.2d at 1231.

The court, in finding that the trial court had correctly granted a motion to suppress evidence because the officer's actions amounted to an arrest without probable cause, noted:

> "When we analyze the events in the case at bar, we conclude that a
> *Terry* stop may have occurred when the officer took the jacket, ordered
> defendant out of the car, and frisked him. When the officer said 'You are
> under arrest' and put handcuffs on defendant, the temporary stop was converted
> into an arrest. We cannot imagine what more an officer would do to

accomplish an arrest than to advise the arrestee, to handcuff him, and to strap him into the police car with a seat belt.

*** Clearly, had the officer searched the jacket first and found the gun and/or other contraband, a lawful arrest could have followed. The problem here is that the arrest came before cause for the arrest was discovered. The trial court correctly granted the motion to suppress." *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32.

In contrast, the court in *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76, held that handcuffing the defendants was within the boundaries of a lawful *Terry* stop because they matched the description of armed robbers, which increased the likelihood that they were armed and dangerous, and the use of the handcuffs was necessary to ensure officer safety during the detention. The police officer in *Starks*, 190 Ill. App. 3d at 505, 546 N.E.2d at 73, was given the description of a robbery suspect when he saw a car leaving a parking lot near the scene of the robbery containing four men, one of whom fit the description of the suspect. After the officer pulled the car over and requested backup units, another officer noticed that defendant's clothing matched the description of the robber's clothing. *Starks*, 190 Ill. App. 3d at 506, 546 N.E.2d at 74. The second officer then ordered defendant out of the vehicle, patted him down and placed him in handcuffs. *Starks*, 190 Ill. App. 3d at 506, 546 N.E.2d at 74. A search of the car revealed a pistol, and a later search of defendant revealed an amount of cash close to what had been taken from the robbery victim. *Starks*, 190 Ill. App. 3d at 506, 546 N.E.2d at 74.

The court found that the officers' actions toward defendant were a *Terry* stop, and not an

arrest, because "[i]t would be paradoxical to give police the authority to detain pursuant to an investigatory stop yet deny them the use of force that may be necessary to make that detention." *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76. The court explained:

> "In [that] case, [the officer] approached a car that may have contained the perpetrator of an armed robbery. When she viewed a man matching the description of the suspect, it was reasonable for her to believe that the man might still be armed. [Citation.] The brandishing of the weapon and the use of handcuffs on the occupants of the car was necessary for the protection of the officers and security of the scene. Police officers are not required to risk their safety by assuming that suspects will submit quietly to questioning." *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76.

On balance, the facts in this case are most analogous with those in *Delaware*, 314 Ill. App. 3d at 371, 731 N.E.2d at 912, and *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32, and factually distinguishable from *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76. Here, as in *Delaware*, 314 Ill. App. 3d at 371, 731 N.E.2d at 912, and *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32, the circumstances were insufficient to create a reasonable inference that defendant was armed and dangerous before Officer Rake handcuffed him. As previously noted, defendant was a passenger in a vehicle stopped for a traffic offense and ran from the car as the officers approached. The facts are explicit that when Officer Rake caught defendant, the officer first handcuffed him and only thereafter moved his hand across defendant's waist, which led to the discovery that defendant had a gun in his possession. There is no indication that the officer

had any visual cues to lead him to suspect defendant's possession of a weapon, nor any resistance by defendant after his apprehension, as to necessitate the use of external restraint. Although this case differs from *Tortorici*, 205 Ill. App. 3d at 628, 563 N.E.2d at 1231-32, in that the police in this case did not advise defendant that he was under arrest or take him to the police vehicle at the time after placing him in handcuffs, those factors are not dispositive. In fact, defendant in *Delaware*, 314 Ill. App. 3d at 366, 731 N.E.2d at 908, was also not told that he was under arrest or taken to a police vehicle at the time of his arrest, and that court nevertheless held that he was arrested at the time he was placed into handcuffs. Moreover, unlike defendant in *Starks*, 190 Ill. App. 3d at 509, 546 N.E.2d at 76, defendant here did not match the description of any armed suspects known to the officers at that time, nor was he in the vicinity of a recent violent crime, so as to provide justification to handcuff him during the stop. Instead, the vehicle in which defendant was a passenger had been stopped for a traffic violation, not to investigate a violent crime, and Officer Hartley admitted that she did not know why defendant was running. Although defendant's flight took place in a high-crime area, defendant in *Delaware*, 314 Ill. App. 3d at 365, 731 N.E.2d at 907, fled from police in the vicinity of a building where gunshots had been heard, and the court still held that the officers were not justified in handcuffing defendant as part of an investigatory stop. Thus, as in *Delaware*, 314 Ill. App. 3d at 365-71, 731 N.E.2d at 907-12, defendant's flight in a high-crime area did not provide sufficient justification to establish fear that defendant was armed and dangerous as to justify handcuffing as a safety measure. Accordingly, the trial court was correct in finding that defendant's handcuffing constituted an arrest.

Nevertheless, the State maintains that the officers acted reasonably in handcuffing defendant after detaining him, and such did not constitute an arrest, and cites *Arizona v. Johnson*, 555 U.S. ___, ___, 129 S. Ct. 781, 785 (2009), *Paskins*, 154 Ill. App. 3d at 420, 506 N.E.2d at 1038 (1987), and *United States v. Sanders*, 994 F.2d 200, 201-02 (5th Cir. 1993), in support of that contention. However, the State's reliance on those decisions is misplaced because in each case, the officers' reason to handcuff defendant during a *Terry* stop was based on markedly stronger indicators of danger than are present here, such as the prior discovery of a weapon (*Johnson*, 555 U.S. at ___, 129 S. Ct. at 788), or that defendant matched the description of an armed suspect (*Paskins*, 154 Ill. App. 3d at 423, 506 N.E.2d at 1041; *Sanders*, 994 F.2d at 207-08). In *Johnson*, 555 U.S. at ___, 129 S. Ct. at 784-85, defendant was a passenger in a vehicle that had been pulled over for a civil infraction, and one of the officers noticed that he kept his eyes on the officers during the stop. The officer also noticed that defendant's clothing was considered consistent with gang membership and that he had a scanner in his pocket. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 785. After the officer asked defendant to exit the vehicle, she patted him down and felt the butt of a gun on his waist, at which point defendant struggled and the officer handcuffed him. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 785. The Supreme Court, in holding that defendant's search was within the bounds of a valid *Terry* stop, notwithstanding the handcuffing, stated that the officer was not required to give defendant an opportunity to depart after he exited the vehicle without first ensuring that, in doing so, she was not allowing a dangerous person to get behind her. *Johnson*, 555 at ___, 129 S. Ct. at 788. In contrast, defendant in this case, who did not struggle during the search, was handcuffed before Officer

No. 1-09-0518

Rake felt a weapon on his waistband, and up to that point, he had not given any indication that he was armed or engaged in gang activity.

This case is also factually distinguishable from *Paskins*, 154 Ill. App. 3d at 420, 506 N.E.2d at 1038, where an officer stopped two defendants who matched the description of burglary suspects, within a few miles and less than one hour from the crime. The officer ordered them to stop, and a pat down revealed a hard bulge in one of defendants' jacket, which he described as "my stuff." *Paskins*, 154 Ill. App. 3d at 423, 506 N.E.2d at 1040. Upon reaching into the jacket pocket, the officer found a clump of jewelry, and he placed both men in handcuffs almost contemporaneously with the pat down procedure. *Paskins*, 154 Ill. App. 3d at 423, 506 N.E.2d at 1041. The court found that under the circumstances, handcuffing defendants was justified within the bounds of an investigatory stop to confirm or dispel the possibility that they had concealed weapons. *Paskins*, 154 Ill. App. 3d at 423, 506 N.E.2d at 1041. In this case, on the other hand, defendant did not match the description of any known suspects who may be armed and dangerous, and he was handcuffed before Officer Rake patted him down and discovered a weapon. Thus, unlike the officer in *Paskins*, 154 Ill. App. 3d at 423, 506 N.E.2d at 1041, Officer Rake did not have a reason to believe that defendant bore a concealed weapon before handcuffing him.

Finally, the decision in *Sanders*, 994 F.2d at 202-08, is not controlling. In that case, police officers responded to a call of a suspicious person with a gun at a grocery store, and defendant was the only one on the premises matching that description. *Sanders*, 994 F.2d at 202. One of the officers handcuffed defendant and frisked him for weapons after he refused to get

-16-

down on the ground, but defendant was advised that he was not under arrest at that point. *Sanders*, 994 F.2d at 202. The court found that, under those circumstances, handcuffing defendant was reasonable in the course of an investigatory stop. *Sanders*, 994 F.2d at 207-08. However, we note that decisions from lower federal courts are not binding on this court (*Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302, 757 N.E.2d 481, 498 (2001)), and in any event, the decision in *Sanders*, 994 F.2d at 207-08, is factually distinguishable from this case, where defendant did not match the description of any person suspected of carrying a concealed weapon when he was handcuffed.

Having determined that Officer Rake's actions in handcuffing defendant constituted an arrest, rather than a *Terry* stop, we must now address defendant's contention that there was an insufficient basis to arrest defendant when he fled from the stopped automobile. As shall be discussed below, we submit that, in fact, probable cause existed to justify defendant's arrest when he fled from the automobile.

As previously noted, probable cause must exist to effect a valid, warrantless, arrest. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause to arrest exists when the totality of the facts and circumstances known to a police officer would lead a person of reasonable caution to believe that the person apprehended has committed a crime, and its existence depends on the totality of the circumstances at the time of the arrest. *People v. Wear*, 229 Ill. 2d 545, 563-64, 893 N.E.2d 631, 642 (2008). Further, probable cause is an objective standard, and a police officer's subjective belief regarding its existence is not determinative. *People v. Chapman*, 194 Ill. 2d 186, 218-19, 743 N.E.2d 48, 68 (2000).

The State contends that even if placing handcuffs on defendant was not a justified restraint pursuant to a *Terry* stop, it was nevertheless justified as a valid arrest. In support of that contention, the State maintains that, although he was a passenger, when defendant fled from the vehicle that had been lawfully stopped for a traffic violation, the police officers had probable cause to arrest him for obstructing a peace officer by reason of his flight, in violation of section 31-1(a) of the Illinois Criminal Code of 1961 (Code), which provides:

"A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2008).

We agree that although the use of handcuffs in this case was not appropriate to detain defendant in a *Terry* stop, it was proper as part of a lawful arrest.

As shall be more fully explained below, the rule is clear that when an automobile is apprehended for a traffic stop, police have a valid right to detain passengers as well as the driver. See *Johnson*, 555 U.S. at ___, 129 S. Ct. at 786-788; *People v. Harris*, 228 Ill. 2d 222, 231, 886 N.E.2d 947, 954 (2008). Consequently, if the passenger flees, he is attempting to avoid detention by an officer who has a valid right to seize him. Since the police officer has the right to detain him, flight by that passenger has been held to constitute an offense of obstruction of a peace officer, which constitutes a Class A misdemeanor. See *People v. Holdman*, 73 Ill. 2d 213, 222, 383 N.E.2d 155, 159 (1978); see also *People v. Jones*, 245 Ill. App. 3d 302, 306, 613 N.E.2d 354, 357 (1993). Thus, in this case, defendant's attempted flight was an offense for which arrest

became appropriate. Accordingly, the use of handcuffs was a proper restraint pursuant to an arrest, even if it would have been unreasonable if gauged under the rules of appropriate restraints during a *Terry* stop.

Defendant contends that his flight from the stopped vehicle did not obstruct the police officers in violation of section 31-1(a) of the Code because he was not the driver of the stopped vehicle, and although the officers were justified in detaining the driver during the stop, they were not so justified in detaining the passenger. Defendant's contention is unpersuasive in point of fact, because when a vehicle is lawfully detained, the passengers, as well as the driver, are subject to that detention. See *Johnson*, 555 U.S. at ___, 129 S. Ct. at 786-88; *Harris*, 228 Ill. 2d at 231, 886 N.E.2d at 954.

The Supreme Court in *Johnson*, 555 U.S. at ___, 129 S. Ct. at 787-88, held that during a traffic stop, the police lawfully detain everyone in the vehicle and do not need cause to suspect that a passenger is involved in criminal activity. As previously noted, the vehicle in which defendant was a passenger was stopped for a civil infraction and an officer asked defendant to exit the vehicle after noticing that his clothing was consistent with gang affiliation and that he had a scanner in his pocket. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 784-85. During a pat down, the officer discovered a gun near defendant's waist, and he was then charged with possession of a weapon by a prohibited possessor. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 785.

In upholding the validity of defendant's search pursuant to a *Terry* stop, the Court observed that although officers effectuating a traffic stop do not have reason to believe that passengers have committed a vehicular offense, the risk of a violent encounter in that setting "

-19-

'stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop.' " *Johnson*, 555 at ___, 129 S. Ct. at 787, quoting *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). The Court then reasoned that the motivation of a passenger to prevent discovery of such a crime just as great as that of the driver, and that " 'as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle,' [citation], so 'the additional intrusion on the passenger is minimal.' " *Johnson*, 555 U.S. at ___, 129 S. Ct. at 787, quoting *Wilson*, 519 U.S. at 415. The Court also noted that in *Brendlin v. California*, 551 U.S. 249, 257 (2007), the Court held that a passenger in a traffic stop is seized from the moment the vehicle comes to a halt because such a stop communicates to a reasonable passenger that he is not free to leave. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 788. It then concluded that defendant was lawfully detained, by virtue of the traffic stop, and therefore, the officer was justified in conducting a search once she had reason to believe that he was armed. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 788.

In *Harris*, 228 Ill. 2d at 232-38, 886 N.E.2d at 955-58, the supreme court held that when a police officers stops a vehicle for a traffic violation, passengers of that vehicle are lawfully seized, even if there is no individualized suspicion of criminal activity on his part at the time of the stop. The police officer in that case stopped a car, in which defendant was a passenger, for making an illegal left turn and discovered that the driver's license had been suspended or revoked. *Harris*, 228 Ill. 2d at 225-26, 886 N.E.2d at 951. The officer then asked defendant for an identification card, as was his usual practice when arresting the driver of a vehicle, and after running a search of his information, discovered an outstanding warrant for defendant. *Harris*,

228 Ill. 2d at 226, 886 N.E.2d at 951. Defendant was then placed under arrest, and a custodial search revealed cocaine on his person and in the car. *Harris*, 228 Ill. 2d at 226, 886 N.E.2d at 951. In holding that the evidence discovered as a result of the warrant check was properly admitted at trial, the supreme court found that the warrant check did not violate defendant's rights under the *fourth amendment* to be free from unreasonable search and seizure because defendant had been lawfully seized as a passenger in a traffic stop. *Harris*, 228 Ill. 2d at 238, 886 N.E.2d at 958.

The court observed that "a passenger is seized for *fourth amendment* purposes when the vehicle in which he is riding is subject to a traffic stop." (Emphasis added.) *Harris*, 228 Ill. 2d at 231, 886 N.E.2d at 954. In doing so, the court relied on the Supreme Court's ruling on this issue in *Brendlin*, 551 U.S. at 257, in which the Court found that " 'any reasonable passenger' would understand 'the police officers to be exercising control to the point that no one in the car was free to depart without police permission.' " *Harris*, 228 Ill. 2d at 231, 886 N.E.2d at 954, quoting *Brendlin*, 551 U.S. at 257. In addition, the court held that since the officer had probable cause to stop the car that he observed making an illegal left turn, the initial stop was lawful, and defendant was, therefore, lawfully seized. *Harris*, 228 Ill. 2d at 232, 886 N.E.2d at 955. The court then held that the warrant check did not infringe on defendant's rights under the fourth amendment, even though the police lacked individualized suspicion because the seizure of defendant was lawful at its inception, it was of reasonable duration and the warrant check did not infringe on a protected privacy interest. *Harris*, 228 Ill. 2d at 232-38, 886 N.E.2d at 955-58.

Similarly to defendants in *Johnson*, 555 U.S. at ___, 129 S. Ct. at 786-88, and *Harris*,

No. 1-09-0518

228 Ill. 2d at 232-33, 886 N.E.2d at 955, defendant in this case was lawfully detained when the vehicle in which he was a passenger was stopped. Officer Hartley initiated the a traffic stop after she observed the driver of a white Chevy fail to stop at a stop sign. At that time, the officers had probable cause to believe that the driver had committed a traffic infraction and, therefore, lawfully seized both the driver and passenger of that vehicle. *Harris*, 228 Ill. 2d at 231-32, 886 N.E.2d at 954. Even without individualized reasonable suspicion that defendant had, himself, engaged in criminal activity, the officers were, at that time, justified in approaching him and asking him questions, as long as they did not infringe on his protected privacy rights and the stop was reasonable in its duration. *Harris*, 228 Ill. 2d at 232-38, 886 N.E.2d at 955-58. Thus, the fact that he was not the driver who had committed the traffic violation is irrelevant to the validity of his detention during the traffic stop.

As it shall be addressed below, it now follows that since the seizure was lawful at its inception, defendant's attempt to evade the police in running from the vehicle gave the officers probable cause to arrest him for obstructing authorized action by a peace officer in violation of section 31-1(a) of the Code. *Holdman*, 73 Ill. 2d at 222-23, 383 N.E.2d at 159-60; *Jones*, 245 Ill. App. 3d at 306-07, 613 N.E.2d at 357.

Section 31-1(a) has been broadly defined by the supreme court to include any "physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties." *People v. Raby*, 40 Ill. 2d 392, 399, 240 N.E.2d 595, 599 (1968). In addition, the supreme court has held that flight from police officers is a physical act within the purview of the statute. *Holdman*, 73 Ill. 2d at 222, 383 N.E.2d at 159.

-22-

We recognize that flight from police is insufficient to establish probable cause for violation of section 31-1(a) when an officer approaches a person to make a *Terry* stop without the requisite suspicion to make the stop. *People v. Moore*, 286 Ill. App. 3d 649, 654, 676 N.E.2d 700, 704 (1997). However, such flight does provide police with probable cause to arrest for obstructing a peace officer if, before defendant fled, the officer in question was justified in detaining defendant at the time of the flight. *Holdman*, 73 Ill. 2d at 222-23, 383 N.E.2d at 159-60; *Jones*, 245 Ill. App. 3d at 306-07, 613 N.E.2d at 357.

The court found, in *Holdman*, 73 Ill. 2d at 221-22, 383 N.E.2d at 159, that defendants' attempt to flee from officers, who shone a light into their vehicle while investigating an unrelated crime, gave them probable cause to arrest them for restricting or obstructing a police officer in violation of section 31-1. In doing so, the court noted that " if the shining of the light is sufficient to constitute a 'stop,' it was permissible for the purpose of investigating possible criminal behavior even though there was no probable cause to make an arrest." *Holdman*, 73 Ill. 2d at 221, 383 N.E.2d at 158. The court then stated:

"Here, [the officers] personally witnessed the defendants' flight in violation of the resistance statute and thus the 'reasonable grounds' are undeniably present. The officers were both in uniform, in a marked police car, and, as the chase began, they activated the squad car's emergency lights and siren. It is obvious the defendants knew they were being pursued by the police, and they were accordingly under a duty imposed by the resistance statute not to oppose the officers' efforts. [Citation.] Thus, we believe the defendants' arrests were

-23-

justified based upon the circumstances surrounding the violation of the statute."

*Holdman*, 73 Ill. 2d at 222-23, 383 N.E.2d at 159-60.

Likewise, the decision in *Jones*, 245 Ill. App. 3d at 306-07, 613 N.E.2d at 357, supports that conclusion. In that case, two officers were dispatched to a parking lot where, according to an informant, five or six black males were exiting a blue van and one of them was carrying a gun. *Jones*, 245 Ill. App. 3d at 303, 613 N.E.2d at 355. At the parking lot, the officers saw four black men, including defendant, entering a blue van and focused their attention on another member of the group, who had reached into his belt. *Jones*, 245 Ill. App. 3d at 303-04, 613 N.E.2d at 355. The four men took off running from the area of the van, and after one of the officers identified his office and called out to the men to halt, defendant kept running south. *Jones*, 245 Ill. App. 3d at 304, 613 N.E.2d at 355. The officers ordered defendant to stop, handcuffed him and took him to the squad car. *Jones*, 245 Ill. App. 3d at 304, 613 N.E.2d at 355. One of the arresting officers later admitted that, other than disobeying his order to halt, defendant had done nothing that appeared illegal. *Jones*, 245 Ill. App. 3d at 304, 613 N.E.2d at 356.

The court held that, under those circumstances, the officers had probable cause to believe that defendant had violated section 31-1, because he attempted to escape the police after a lawful order to halt. *Jones*, 245 Ill. App. 3d at 306, 613 N.E.2d at 357. In reaching its conclusion, the court noted that defendant conceded that the officer's order to halt was an authorized act because it was a legitimate exercise of his investigative authority. *Jones*, 245 Ill. App. 3d at 306-07, 613 N.E.2d at 357. The court then reasoned:

> "The evidence enabled the trial court to conclude that [the officer] ordered

defendant to halt, but defendant kept on running. Indeed, assuming *arguendo* that [the officer] had no reason to believe that defendant heard the original order, defendant's continued attempts to elude [the officer] gave [him] probable cause to believe defendant was obstructing the performance of [the officer's] investigative duties. It is well settled that such flight is a form of resisting or obstructing a police officer." *Jones*, 245 Ill. App. 3d at 307, 613 N.E.2d at 357.

In contrast with this case, the court in *Moore*, 286 Ill. App. 3d at 654, 676 N.E.2d at 704, concluded that an officer did not have probable cause to arrest defendant, who had fled from a police officer, based on the fact that when the officer approached defendant, he did not have sufficient facts to justify a *Terry* stop. In *Moore*, 286 Ill. App. 3d at 651, 676 N.E.2d at 702, an officer saw defendant next to a van parked in front of a tavern, which was known to be frequented by gang members and where narcotic activities and shootings had occurred before. The officer saw what appeared to be an exchange of money between defendant and someone inside the van, and began walking towards the vehicle. *Moore*, 286 Ill. App. 3d at 650-51, 676 N.E.2d at 702. Defendant began walking faster, and when the officer started chasing him, defendant ran and turned into an alleyway. *Moore*, 286 Ill. App. 3d at 651, 676 N.E.2d at 702. When defendant was apprehended and patted down, a bag of cocaine was found on his person. *Moore*, 286 Ill. App. 3d at 651, 676 N.E.2d at 702.

In affirming the trial court's granting of defendant's motion to suppress, the court held that since the officer was not justified to detain defendant for a *Terry* stop, there was no probable cause to arrest defendant for violating section 31-1 when he ran from police. *Moore*, 286 Ill.

App. 3d at 653, 676 N.E.2d at 704. The court stated:

> "We agree with the trial court that [section 31-1(a)] does not apply to the
>
> facts presented in this case. When a police officer approaches a person to make a
>
> *Terry* stop without sufficient articulable facts to warrant the stop, the officer's
>
> actions are not 'justified at the inception.' [Citation.] In this circumstance, a
>
> person who runs away is not resisting or obstructing an authorized act of the
>
> police officer." *Moore*, 286 Ill. App. 3d at 654, 676 N.E.2d at 704.

In this case, Officers Hartley and Rake had the right under *Terry* to detain defendant, who was a passenger in a car, even if that car was stopped for a traffic violation only. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 786-88; *Harris*, 228 Ill. 2d at 231, 886 N.E.2d at 954. Consequently, when defendant ran from the vehicle, the officers had probable cause to arrest him fleeing. Although the officers were patrolling the area in plainclothes in an unmarked police vehicle when they pulled over the vehicle, they activated the police vehicle's emergency lights to signal the driver of the Chevy to pull over for a traffic stop. As the officers approached the vehicle, they saw defendant run out of the car. Like defendants in *Holdman*, 73 Ill. 2d at 222-23, 383 N.E.2d at 159-60, it is clear that defendant here knew that he was being stopped by police when the officers activated their emergency lights and he attempted to flee. Moreover, analogously to defendant in *Jones*, 245 Ill. App. 3d at 307, 613 N.E.2d at 357, defendant here did not appear to have committed a crime when he fled, but attempted to elude police in obstruction of their ongoing investigation of another crime. In addition, unlike the officers in *Moore*, 286 Ill. App. 3d at 654, 676 N.E.2d at 704, the officers in this case were justified in approaching the vehicle in

which defendant was a passenger pursuant to a valid traffic stop because the vehicle had failed to stop at a stop sign. We recognize that if the original traffic stop had been unwarranted, the officers would not have had the right to detain defendant. However, the facts in this case do not negate that when the vehicle was stopped, it was violating a traffic law. Since the stop was warranted, the officers had the right to detain defendant as a passenger and were justified in arresting defendant when he fled, thereby committing obstruction of a peace officer.

Defendant, nevertheless, maintains that when he fled from the stopped vehicle, the police did not have probable cause to arrest him for obstructing an officer because there were two officers present, and since one of them could have effectuated the traffic stop while the other detained defendant, his flight did not obstruct the officers' authorized acts. However, that contention lacks merit because, as discussed above, the officers were justified in detaining defendant as a passenger of a car stopped for a traffic violation. *Johnson*, 555 U.S. at ___, 129 S. Ct. at 786-88; *Harris*, 228 Ill. 2d at 231, 886 N.E.2d at 954. Consequently, by fleeing from the police during such lawful detention, he committed obstruction of a peace officer in violation of section 31-1(a) of the Code. *Holdman*, 73 Ill. 2d at 222-23, 383 N.E.2d at 159-60; *Jones*, 245 Ill. App. 3d at 307, 613 N.E.2d at 357. Accordingly, it is irrelevant that one of the officers could have effectuated the traffic stop while another one apprehended him, because he had already been lawfully seized by virtue of the traffic stop and his flight from police at that time constituted obstruction of a peace officer.

Since the police officers had probable cause to arrest defendant for violation of the statute, the handgun in his waistband would have been found on him as a search incident to

arrest. See *People v. Hoskins*, 101 Ill. 2d 209, 216, 461 N.E.2d 941, 944 (1984) (finding that a lawful arrest establishes the authority to search, and a search of a person pursuant to a lawful arrest is not only an exception to the warrant requirement under the fourth amendment, but a reasonable search under the amendment).

Defendant also contends that the officers cannot be found to have had probable cause to arrest defendant for obstruction because Officer Hartley did not testify that they suspected him of obstruction and he was never charged with that offense. However, that does not deter this court from finding that defendant's arrest was valid if probable cause existed at the time he was apprehended. In fact, defendant's argument has been explicitly rejected by the supreme court in *Wear*, 229 Ill. 2d at 566, 893 N.E.2d at 644, and *Holdman*, 73 Ill. 2d at 223, 383 N.E.2d at 159-60. In *Wear*, where the arresting officer testified that he did not have probable cause or the intent to arrest defendant at the time of the incident giving rise to the charges, the court found that " '[a]n action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action." [Citation.]' " *Wear*, 229 Ill. 2d at 566, 893 N.E.2d at 644 (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404 (2006)). Moreover, in *Holdman*, 73 Ill. 2d at 223, 383 N.E.2d at 160, where officers had probable cause to arrest defendants for obstruction after then ran from police, the court held that "[t]he fact that a formal charge of resisting or obstructing a police officer was never made does not detract from our conclusion in light of the supervening events concerning the armed robbery charge."

Similarly, in this case, Officer Hartley failed to testify that she had probable cause to

arrest defendant when he ran from the vehicle. As previously discussed, her testimony attempted to establish that the apprehension of defendant was justified as a *Terry* stop, and that he was not under custody until after Officer Rake discovered the gun in his waistband. However, that fact does not preclude us from concluding that probable cause existed at the time Officer Rake handcuffed defendant and moved his hand across defendant's waist. *Wear*, 229 Ill. 2d at 566, 893 N.E.2d at 644. Neither does the fact that defendant was not formally charged with obstructing a peace officer require us to reach a different conclusion.

For the above cited reasons, we agree with the trial court's conclusion that the officers' actions in handcuffing defendant constituted an arrest, but find that the officers had probable cause to execute the arrest and that his motion to quash arrest and suppress evidence should have been denied.

Affirmed in part and reversed in part.

HOWSE, J., and EPSTEIN, J., concur.

No. 1-09-0518

| | REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please use the following form | People of the State of Illinois, et al<br><br>Appellant,<br><br>v.<br><br>Ron Johnson<br><br>Appellee. |
| Docket No.<br><br>COURT<br><br><br><br>Opinion Filed | No. <u>1-09-1508</u><br><br>Appellate Court of Illinois<br>First District, <u>FIFTH</u> Division<br><br><u>December 23, 2010</u><br>(Give month, day and year) |
| <br><br>JUSTICES | JUSTICE JOSEPH GORDON DELIVERED THE OPINION OF THE COURT:<br><br><u>Howse, J, and Epstein, J.,</u>, concur. |
| APPEAL from the Illinois Commerce Commission; the Hon___ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>The circuit court of Cook County.<br><br>The Hon. <u>Mary M. Brosnahan</u> Chairman. |
| <br><br><br><br>APPELLANTS:<br>State of Illinois | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>APPELLANT:Anita Alvarez, State's Attorney, James E. Fitzgerald, Veronica Calderon Malavia, Ugo H. Buzzi, County of Cook, Room 309 - Richard Daley Center, Chicago, IL 60602 |
| For APPELLEES, Johnson | APPELLEES:Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, Julianne Johnson, Assistant Appellate Defender, Officer of the State Appellate Defender, 203 N. LaSalle Street, 24th Floor, Chicago, IL 60601 |

| | |
|---|---|
| Add attorneys for 3rd party appellants and/or appellees. | -31- |