# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Brown*, 2013 IL App (1st) 083158

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNIE BROWN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-08-3158 |
| Filed<br>Rehearing denied | March 13, 2013<br>June 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for burglary and sentence as a mandatory Class X offender, the trial court, on remand, did not err in granting defendant's motion to quash his arrest and suppress evidence, and his conviction was reversed, since the officers who immediately took defendant into custody and handcuffed him while he was exiting a building during the "pandemonium" of the police response to a reported burglary exceeded the scope of a *Terry* stop by searching defendant, especially when a reasonably cautious person would not have believed defendant had committed a crime. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-25841; the Hon. John J. Moran, Jr., and the Hon. Shelley Sutker-Dermer, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Alan D. Goldberg, Michael J. Pelletier, Patricia Unsinn, and Sean Southern, all of State Appellate Defender's Office, of Chicago, for appellant. |
| --- | --- |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Joseph M. Preiser, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion. |
| | Presiding Justice Neville and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, defendant Donnie Brown was convicted of burglary and sentenced as a mandatory Class X offender to six years' imprisonment. On appeal, defendant contended that his oral motion to quash arrest and suppress evidence, made at trial, should have been granted. We agreed, reversing his conviction. *People v. Brown*, No. 1-08-3158 (May 26, 2010) (unpublished order under Supreme Court Rule 23). In denying the State leave to appeal, our supreme court issued a supervisory order directing us to vacate our judgment, remand for an evidentiary hearing on the motion to quash, and retain jurisdiction here. *People v. Brown*, 238 Ill. 2d 656 (2010) (table). This court and the circuit court acted as directed. On remand, the circuit court, after hearing additional testimony, granted defendant's motion to quash arrest and suppress evidence. Defendant also contends that the evidence at trial was insufficient to convict him beyond a reasonable doubt. Lastly, he contends that his term of mandatory supervised release (MSR) should be the two years for his Class 2 felony offense rather than the three years for a Class X felony.

¶ 2 Defendant was charged with burglary in an indictment alleging that he and codefendants Yarnell Brown and Christopher Evans entered a building owned by Daniel Diaz on November 27, 2007, without authority and with the intent to commit theft therein. In a separate bench trial, the court found defendant guilty, expressly finding the police testimony credible.

¶ 3 Immediately thereafter, the court noted that, in an earlier sidebar, defendant made an oral motion to quash based on the discrepancies in the police testimony regarding whether defendant had anything in his hands when he exited the building. The court stated that defendant would be allowed to argue the motion over the State's sidebar objection. Defendant then argued that there was no probable cause to arrest him when he was walking out the back door empty-handed as his codefendants ran out the front door carrying stolen goods. The State made no argument on the motion. The court denied the motion, finding that the police had the requisite reasonable suspicion for "at least" a *Terry* stop of defendant

based on him exiting the building during the "pandemonium" of the police response to the reported burglary and codefendants' flight in the middle of the night.

¶ 4 Defendant filed a posttrial motion arguing insufficiency of the evidence and that his oral motion to quash should have been granted. The court denied the motion and proceeded to sentencing. The court found defendant to be subject to Class X sentencing, based on his prior felony convictions, and sentenced him to six years' imprisonment.

¶ 5 In defendant's initial appeal, we considered the motion to quash on its merits, though it was an oral motion at trial rather than a written pretrial motion, because defendant made the motion in light of the discrepancy between Officer Schwandt's trial testimony and the police report on the issue of whether defendant had anything in hand when he exited the building. In our order of May 26, 2010, we held that the motion to quash should have been granted and found that, without the now-suppressed evidence, the evidence against defendant was insufficient so that retrial would be futile. Accordingly, we reversed his conviction and did not address the two remaining issues he raised.

¶ 6 The supreme court later denied the State leave to appeal, in a supervisory order directing this court to vacate its judgment of May 26, 2010, remand to the circuit court for an evidentiary hearing on the motion to quash, and retain jurisdiction here. *People v. Brown*, 238 Ill. 2d 656 (2010) (table). We so ordered.

¶ 7 Upon remand, the trial court conducted an evidentiary hearing involving further testimony regarding defendant's arrest. The trial court considered the original trial testimony along with the testimony presented at the evidentiary hearing and granted the motion to quash arrest and suppress evidence. The State's motion to reconsider was denied.

¶ 8 In our review of this case, we must first determine whether the trial court was correct in its finding that there was an unlawful arrest under *Terry* and, if so, whether the record, excluding evidence secured in violation of *Terry*, is sufficient to sustain defendant's conviction beyond a reasonable doubt. We have reviewed the trial and subsequent testimony in reaching our decision.

¶ 9 At trial before Judge John Moran, Jr., police officer Rich Yi testified that, at about 1:30 a.m. on the day in question, he and another officer responded to a report of a burglary in progress at the premises in question, a two-story apartment building with a store on the ground floor. As Officer Yi and his partner arrived at the premises, Officer Yi saw two men–codefendants–running out the front door carrying various metal tools. When the men saw the officers, they dropped the tools and fled southbound. Officer Yi and his partner pursued them and arrested codefendant Brown. Codefendant Evans was later arrested by other officers. When Officer Yi returned to the premises, he found that codefendants had dropped a circular saw, blades for such a saw, and a socket wrench. Officer Robert Schwandt gave Officer Yi a doorknob "among other items," which he brought with the tools to the police station. There, Diaz viewed the recovered objects and Officer Yi then inventoried them.

¶ 10 Officer Robert Schwandt testified that he and another officer also responded to the report

of a burglary in progress, approaching the premises from the rear by the alley. Officer Schwandt saw defendant exit the building by the rear door, with his hands in his pockets. Officer Schwandt and his partner immediately placed defendant in custody, "because there was [*sic*] many people coming in and out of that building from the call." They handcuffed him and told him that he was in custody but not under arrest. As Officer Schwandt searched defendant, he received a radio report of Officer Yi's pursuit of codefendants at the front of the building. The search recovered "several" doorknobs and a television remote control from one of defendant's jacket pockets, which Officer Schwandt later gave to Officer Yi. When Officer Schwandt went inside the building, he found that an interior door between the store and residential portions of the building had been pried open. The storage areas in the store corridor leading from that door were in disarray, with locks, doorknobs, and tools scattered about. After defendant was arrested and informed of his *Miranda* rights, he told Officer Schwandt that he had been visiting a friend in one of the apartments, though he could not recall the friend's name or which apartment he was in.

¶ 11     On cross-examination, Officer Schwandt explained that he did not prepare a report of the incident but did review the report and inventory prepared by Officer Yi based on his (Officer Schwandt's) verbal report at the scene. The report indicated that defendant walked out the rear door with a tool in hand, and Officer Schwandt acknowledged that he mentioned a tool to Officer Yi at the time. The inventory did not include any doorknobs or a remote control.

¶ 12     Daniel Diaz testified that he owned the building in question. The store was not occupied at the time, but Diaz kept tools, doorknobs, and similar items in the storage areas on the corridor leading into the store. The door between the store and the apartments was locked and intact on the day before the incident. After the incident, Diaz went to the police station and identified a saw and doorknobs from the building. When he went to the building, Diaz saw no damage to either the front or rear doors, while the interior door between the store and residential areas was damaged as if pried open. The storage areas were "a mess." Diaz had not given defendant permission to be in his building on the day in question or any other. On cross-examination, Diaz acknowledged that he had a residential tenant named Shawn Gray and that his residential tenants could have visitors without Diaz's permission or knowledge.

¶ 13     The court denied defendant's motion for a directed finding.

¶ 14     Shawn Gray testified for the defense that he resided in the building in question on the day in question, also testifying that he lived there for a "little over a year" beginning April 2006. Defendant was a friend of Gray and knew Gray by name as well as nickname. On the night in question, defendant visited him at his apartment from about 9 p.m. to about 1:30 a.m., when Gray saw defendant out by the back door. Gray immediately went back inside, seeing nothing unusual as defendant left the building. He did hear a commotion–voices and running, but not police sirens–a minute or two later. When Gray learned of defendant's arrest the next day, he did not contact the police.

¶ 15     In finding defendant guilty, the trial court expressly found the police testimony credible.

¶ 16     While this case was pending before this court and our supreme court, Judge Moran

retired. On remand, the evidentiary hearing on defendant's motion to quash was conducted in November 2011 by Judge Sutker-Dermer.

¶ 17    At the evidentiary hearing, the parties stipulated that Officer Schwandt would testify in the hearing as he had at trial. Additionally, Officer Schwandt testified that, at about 1:50 a.m. on the day in question, he and another officer responded to a radio report of a burglary in progress–without further description–at the premises in question. He heard other officers respond to the same report, and he and his partner went to the rear of the building while other officers went to the front. The building in question was large, with basement and second-floor apartments and an unoccupied store on the ground floor. The alley behind the building was dimly lit, with gangways between the buildings leading to the alley and many trash cans and "places where people could be hiding." Though he had not responded to any earlier calls regarding these premises, he was somewhat familiar with the neighborhood and feared for his safety under the circumstances. Officer Schwandt and his partner approached the rear exit of the building and were about to open the door when defendant exited through it. Not knowing who else may be exiting, or who else may be in the alley, Officer Schwandt immediately handcuffed defendant and performed a pat-down. The pat-down found a "couple [of] doorknobs" in his jacket pocket, which Officer Schwandt removed. When asked if he feared that the doorknobs he felt were weapons, he replied "[t]hat's always a possibility."

¶ 18    On cross-examination, Officer Schwandt clarified that his partner was with him throughout the confrontation with defendant. They learned that other suspects were being pursued in the front of the building "right after we confronted" defendant, then they handcuffed and searched him. The radio call reporting the fleeing suspects did not mention weapons or shots being fired. Once defendant had been handcuffed, he could not reach the items in his jacket pocket. Because defendant was stopped immediately after exiting, he had no chance to flee.

¶ 19    Following arguments, the court found that "Officer Schwandt did not provide specific and articulable facts [that] would warrant handcuffing the defendant and frisking and searching him upon exiting the building." The court noted that defendant was not running and did not have anything in his hands, and that there was "no indication there was anyone behind him." The court concluded that the scope of a *Terry* stop was exceeded by the search and granted the motion to quash arrest and suppress evidence. The State's motion to reconsider was denied.

¶ 20    This case is before us again as we retained jurisdiction pursuant to the supervisory order, which also provided:

"Either party will then have the right to assert or renew allegations of error on the issue in the appellate court, and the appellate court will address defendant's additional claims regarding the sufficiency of the evidence and sentencing order, if appropriate." *Brown*, 238 Ill. 2d at 657.

The State supplemented the record with transcripts of the evidentiary hearing held on remand and of the hearing on the State's motion to reconsider the granting of the motion to quash.

The State informed this court that it would not need to file a supplemental brief while briefly arguing that, if we found that the motion to quash was properly granted, the proper disposition would be a remand for retrial rather than outright reversal. In turn, defendant informed this court that he would not file a supplemental brief because he prevailed following the evidentiary hearing. We agree with the parties that further briefing is not needed because the previously filed briefs clearly articulate each party's position regarding defendant's motion to quash. Thus, we can resolve this appeal on the now-supplemented record to determine whether the trial court correctly granted defendant's motion to quash.

¶ 21 Police-citizen encounters are divided into three tiers: arrests, which must be supported by probable cause; investigative or *Terry* stops, which must be supported by reasonable, articulable suspicion of criminal activity; and encounters that involve no coercion or detention and thus do not implicate constitutional rights. *People v. Hopkins*, 235 Ill. 2d 453, 471 (2009).

¶ 22 In a *Terry* stop, a police officer may briefly detain a person he reasonably suspects to be recently or currently engaged in criminal activity, in order to verify or dispel those suspicions. *People v. Johnson*, 408 Ill. App. 3d 107, 112 (2010). A *Terry* stop must not, in scope or duration, exceed a brief investigatory detention. *Id.* at 113. While handcuffing a person tends to indicate that his detention is an arrest rather than a *Terry* stop, handcuffing is consistent with a *Terry* stop when and "only when it is a necessary restraint to effectuate the stop and foster the safety of the officers." *Id*. During a *Terry* stop, "if the officer reasonably believes that the person detained is armed and dangerous, the officer may subject the person to a limited search for weapons," or frisk. *Id*. at 112.

¶ 23 Probable cause for an arrest exists if the facts and surrounding circumstances, considered as a whole, are sufficient to justify a belief by a reasonably cautious person that the defendant is or has been involved in a crime. *Hopkins*, 235 Ill. 2d at 472. Our analysis of probable cause is based on common sense and concerns the probability of criminal activity rather than proof beyond a reasonable doubt. *Id.* The State need not show that it was more likely true than false that defendant was involved in criminal activity. *Id.* The difficulty of establishing probable cause is reduced when the police know that a crime has been committed. *Id.* at 476. Upon a person's arrest, police may search his person and the area within his immediate control. *People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009). However, as the authority for searches incident to arrest is derived from the interests of officer safety and evidence preservation arising when officers make an arrest, those interests are not implicated if the suspect cannot possibly reach into the area officers seek to search. *Id.*

¶ 24 When a trial court's ruling on a motion to quash involves factual determinations or credibility assessments, the findings will not be disturbed on review unless they are against the manifest weight of the evidence. *Hopkins*, 235 Ill. 2d at 471. However, we review *de novo* the trial court's ultimate legal ruling to grant or deny the motion. *Id.*

¶ 25 Here, in reviewing the trial court's postremand disposition of the motion to quash following the evidentiary hearing, we first examine the propriety of taking defendant into custody under the circumstances known to the police at the time. In the middle of the night,

officers responded to a report of a burglary in progress at a particular building. That was confirmed when some of the officers reported that they were pursuing two suspects who had run out of that building by the front door with tools in their hands and fled. Officer Schwandt and his partner saw defendant leave the building by the back door with his hands in his jacket pockets and immediately took him into custody. With defendant leaving the scene of a crime in the middle of the night shortly after suspects fled by another exit, the officers could reasonably suspect defendant's involvement in a recent crime and thus had grounds to conduct a *Terry* stop.

¶ 26 However, by handcuffing defendant when there was no articulable basis for believing that defendant was armed or dangerous–Officer Schwandt's general fear for his safety because he was in a dark alley with ample places for suspects to hide notwithstanding–Officer Schwandt arrested him rather than merely conducting a *Terry* stop. That arrest was made immediately after defendant passed through the doorway, before he showed signs of fleeing as the suspects at the front door had. As no proceeds of the burglary, burglary tools, or other contraband were visible, he was not doing anything illegal on its face. Though certainly not conclusive, we find it telling regarding the amount of evidence that Officer Schwandt believed he had to support his actions that he professed to be conducting a *Terry* stop rather than an arrest. We find that a reasonably cautious person would not believe under these circumstances that defendant had committed a crime, so that there was no probable cause to arrest him when he was taken into custody.

¶ 27 Moreover, the officers exceeded the scope of a *Terry* stop by searching defendant. While a protective pat-down for weapons may be performed in conjunction with a *Terry* stop, a general search may not. Moreover, the immediate handcuffing of defendant upon being taken into custody eliminated the need to frisk him for officer safety. We conclude that the search was improper. The trial court did not err in granting defendant's motion to quash arrest and suppress evidence upon remand.

¶ 28 Because the motion to quash was granted, the doorknobs and remote control recovered in the search have been suppressed. Without that concrete evidence that defendant committed burglary, we find that it would be essentially impossible for the State to convict him of burglary beyond a reasonable doubt. The State notes that, in *People v. Lopez*, 229 Ill. 2d 322, 367 (2008), our supreme court stated that a finding of trial error requires us to "consider whether the evidence presented at trial, including the now-suppressed [evidence], was sufficient to convict." The *Lopez* court explained that the basis for this rule is that the "double jeopardy clause prohibits retrial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to present in the first proceeding" but "does not, however, preclude retrial where a conviction has been set aside because of an error in the proceedings leading to the conviction." *Id.* However, defendant has on appeal raised a separate and distinct contention that the evidence against him was insufficient to convict. Thus, we are faced with a broader question than whether double jeopardy bars remand for a new trial. We find that the evidence presented at trial, minus the postarrest evidence excluded by the trial court, is insufficient to convict, and thus we reverse defendant's conviction. Having done so, we need not address his contention concerning MSR.

¶ 29        Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.

¶ 30        Affirmed in part and reversed in part.